MERRITT CAMP, plaintiff in error, *vs.* EVAN HOWELL, defendant in error.

1. Where a case has been submitted to the jury as favorably for the losing party as the law will warrant, and the jury find a verdict in accordance with the evidence, it is error in the Court to grant a new trial.

2. Where the holder of a promissory note, without the assent of the surety, agreed with the principal to wait twelve months, in consideration of the promise of sixteen per cent. interest; and for the nine per cent. usurious interest took a new note with security, a portion of which usurious note was subsequently paid, and the time was given accordingly; *Held,* that the surety to the original note was discharged.

Assumpsit.    New trial.    Granted by Judge HUTCHINS. Gwinnett Superior Court.    July Adjourned Term, 1867.

Evan Howell brought complaint against the Lawrenceville Manufacturing Company, Jesse Lowe, James Garmany, and Merritt Camp, upon a promissory note in these words:

"$3,701.98.          LAWRENCEVILLE, May 9th, 1856.

Thirty days after date the Lawrenceville Manufacturing Company will pay to Evan Howell, or bearer, Three Thousand Seven Hundred and One 98–100 Dollars value received.

J. S. PETERSON, Ag't. Law. Mf'g. Co.
JESSE LOWE, Prest.
JAS. GARMANY.
MERRITT CAMP.

July 28th, 1856, Received on this note $1,900 dollars."

Camp plead that he was only surety for the Lawrenceville Manufacturing Company, and that plaintiff had indulged the company, to Camp's injury, for a consideration, and thereby discharged Camp.

There had been a trial by which Lowe and Camp were discharged by the jury, and a new trial was granted by the Supreme Court.

On this new trial, Camp only defending, plaintiff's attorneys read in evidence said note and closed.    Defendant's attorneys read the answers to two sets of interrogatories for said Peterson.    He answered substantially in the first set,

which were executed on the 27th of July, 1858, as follows :

He was agent of said company at the date of the note, and signed it as agent. Lowe was then president of the company, and signed as such, to bind the company. Witness knew not what Lowe's intention was.

When Merrill Camp and Garmany signed the note, it was to have been signed by Lowe in his individual capacity, and the other directors, to-wit: John Mills, Hiram R. Williams, Joseph P. Brandon, James P. Simmons and Richard D. Winn (as he recollected them) were to sign it, also, as securities. How the note was delivered witness did not recollect ; he was to have the note signed, and sent to S. G. Howell at Atlanta, but as it passed into plaintiff's hands before all who were to have signed it had done so, witness did not think he could have sent it by letter to S. G. Howell as he was to have done ; he did not feel at liberty to have sent it till he got more names to it ; he did not recollect why it was not signed by the others, but up to the time of the delivery he had failed to see them.

Afterwards, say in September, 1856, Evan Howell came to the office at the factory to collect the balance on the note. Dr. Garmany, the then president of the company, and witness were present ; they satisfied Howell they could not then pay said balance, and then Howell suggested that if they would pay him sixteen per cent. *per annum* interest, twelve months longer credit would be allowed, and as the note drew seven per cent. they could make another for the nine per cent. Accordingly a new note for about $160.00 was drawn and signed by witness, as such agent, and Garmany as security. Whether this note was due at one day or twelve months after date witness did not recollect. He, Garmany and Howell were the only parties to this last contract.

The consideration of the original note was a lot of cotton bought by witness as agent for the company, by authority of the president and board of directors, from plaintiff. Camp was only a security, and Lowe signed it officially. Neither Camp nor Lowe knew anything about the contract for an extension of time, till some time after it was made.

The practice of the company was for witness as agent, and the president to sign notes officially, and the directors signed immediately under their names as securities, their names being put in brackets, and the word security written across the note. It was not done in this case, because plaintiff got the note before all had signed it.

Upon cross-examination he said, plaintiff was absent when the note was drawn and signed, as witness recollects. The weights of the cotton were summed up at S. G. Howell's in Atlanta, and witness was to have sent the note to him, but whether the note was so sent or the plaintiff came to the factory and got it, witness did not remember.

Whether plaintiff knew in what character the parties signed the note witness did not know, but witness did know that he promised him a note made in the usual way, with the board of directors as securities. The note was given for some eighty bales of cotton; all the signers of it, except witness, were stockholders of the company.

By a rule of the board of directors witness could not sign a note larger than for $500.00, without their authority; witness did not know that it was necessary for the president to sign the note to make it binding; when the president did sign, it was done to relieve the creditors of doubt as to the agent's authority. Lowe signed officially, as usual, and hence witness said he signed it officially.

Camp always complained that the note went out with so few names on it, and was dissatisfied when he heard of said extension, and the terms on which it was secured. About $100.00 was paid, by waste bagging and rope, by Garmany, last summer, on this small note, but whether the balance was paid witness did not know. Witness was authorized to buy the cotton, and promise the members of the board, or a majority of them, as security. The payment credited on the note was accepted by plaintiff, and he expressed no dissatisfaction with the note because it had no more signatures.

The second set of interrogatories for Peterson were answered on the 9th of September, 1861.

So much of those answers as qualify or vary the former

Camp *vs*, Howell.

answers was as follows : The company had little credit, and could not buy without giving security, and the members of the board usually became the security. He told plaintiff and S. G. Howell both, that he was buying as such agent, and proposed to them to give the defendants and others as security. As he then recollected he sent the note by letter to S. G. Howell, but does not recollect that he told him in what capacity the defendants signed.

R. D. WINN was then introduced, and testified that he was originally a stockholder in said company, and once one of its directors. The company is insolvent, was sold out by the sheriff, six or eight years ago, for debts; notes given by the company were usually signed by its officers, and undersigned by other members of the company, always as he remembers, as security.

In rebuttal, S. G. HOWELL testified that Peterson, as such agent, bought of plaintiff about eighty bales of cotton—the cotton was be delivered when Peterson should send a note satisfactory to witness, who, in selling and delivering the cotton, acted as the agent of his father, the plaintiff. The cotton was to be sent to Lawrenceville; by mistake of the Agent of the Georgia Railroad, the cotton was sent before the note was received. The note was to be signed by the company and certain others, among them (the witness thinks) Mr. Simmons. The note was sent to him without the names mentioned, but it being satisfactory to him, he sent it to his father. Witness knew nothing of the character in which the makers signed the note, except from its face,—might have inferred they were securities, but heard nothing said on the subject. He knew not whether his father knew in what character defendants signed the note. The conversation testified to by Peterson was at S. G. Howell's house in Atlanta, after the trade for the cotton had been made.

The charge of the Court is not shewn by the record. The jury found for Camp.

A motion for a new trial was made on the following grounds :

1st. Because the Court erred in his charge to the jury, in

saying he had, on a former trial of this case, charged what he then thought was the law, but the Supreme Court had decided differently, and the decision of that Court was the law of the case, and then read the decision of the Supreme Court containing his former charge and their decision, and charged accordingly. Plaintiff's attorneys say that this expression of his former opinion was calculated to make a wrong impression on the minds of the jury.

2d. Because the Court erred in refusing to charge the jury as requested in writing; that an usurious contract is void; and that an indulgence granted upon such a contract was in law merely voluntary in its character, as the contract for the same was not binding upon either of the parties, and might at any time, be disregarded by them.

3d. Because the verdict of the jury was contrary to law, to the charge of the Court and the evidence, in that the Court charged in substance, that in order for the defendant to avail himself of the defense set up, he must show that he was security only, and not a principal on the note, and that plaintiff knew he was a security only, at the time he gave the indulgence, of which knowledge there was no sufficient evidence produced.

4th. Because the verdict was decidedly and strongly against weight of the evidence and contrary to law.

5th. Because Wm. J. Woodward and Martin Armstrong, two of the jury who found this verdict, were of the jury who tried the case before, to-wit: in 1860, and found a verdict for defendant, which fact was unknown to plaintiff or his attorneys.

This last ground was supported by several affidavits:

GEORGE HILLYER, Esq., affirmed that he was not at the former trial,—was plaintiff's attorney at this trial, but had little or no knowledge of the case before that term of the Court, and did not know Woodward and Armstrong were on the former jury; he did however, after the evidence was closed and before argument was had, hear that Woodward was on the former jury.

TYLER M. PEEPLES, Esq., affirmed that, though present

at the former trial, and probably then knowing who were on the jury, yet, by lapse of time, absence from the county, and for want of examining the minutes of the Court, he had entirely forgotten who were on the former jury; that he struck this jury without remembering that any of the list were on the former jury. After the evidence was closed on both sides, he was told Woodward was on the former jury, but he did not positively know it till after the verdict was rendered and he examined the minutes and found that Woodward and Armstrong were both on the former jury.

W. W. CLARK, Esq., affirmed that he was attorney for plaintiff in both trials, and knew not that any of the old jury were on this one; that plaintiff was an old man and the case was tried in his absence; that W. Hope Hull, Esq., one of plaintiff's attorneys, was not at the trial; affiant lived in Covington, Hillyer in Atlanta, Hull in Athens and Peeples in Lawrenceville; Gwinnett county, Georgia.

The Clerk affirmed that Woodward and Armstrong were of the special jury of November, adjourned Term, 1859, and of the special jury of March Term, 1866, who tried this case.

*Per contra*—WOODWARD and ARMSTRONG affirmed that though on the former jury, they had, in this trial, been governed by the law as charged, and the evidence as they understood it.

The Court granted a new trial on said 3d and 4th grounds. The granting of this new trial is assigned for error.

PEEPLES, HULL, HILLYER and W. W. CLARK, for plaintiff in error.

J. N. GLENN, SIMMONS & WINN, (by the Reporter) for defendant in error.

WALKER, J.

When this case was before this Court in 1860, 31 Ga. R., 663, a new trial was granted on the sole ground that the charge of the Court below assumed the fact that plaintiff knew Camp was surety for the company. The case was

sent back in order that the jury might pass upon the issue whether at the time Howell agreed to give time to the company, he knew that Camp was only security. This issue has been passed upon by the jury, and the verdict is in favor of Camp. The Court set aside the verdict as being against the evidence, and his judgment granting a new trial is brought up for review.

1. We think the verdict is supported by the evidence, and therefore the Court should not have granted a new trial. No complaint is made of the charge of the Court; the case was submitted to the jury as favorably for the plaintiff, as the law would authorize, and the verdict being sustained by the evidence should stand.

2. When this case was brought to this Court before it seemed to have been taken for granted, on all hands, that the contract to give time to the principal was a discharge of the surety, if, at the time of making the contract to give time, the plaintiff knew that Camp was surety. This time, however, that proposition is disputed, and it is insisted that the giving of the note for usurious interest, and past payment thereof, in consideration of twelve months delay to sue, did not discharge. The contract of suretyship is one of strict law, Revised Code, section 2122, and any change of the nature or terms of the contract, without the consent of the surety, discharges him; a mere failure by the creditor to sue as soon as the law allows, or negligence to prosecute with vigor his legal remedies, *unless for a consideration,* will not release the surety, Rev. Code, secs. 2125, 2126. A failure to sue "for a consideration" releases the surety. Was not a note with security for one hundred and sixty dollars a consideration? Was not the payment of one hundred dollars on this usurious note a consideration? The plaintiff contracted to give time in consideration of the promise of legal interest on his debt, and the usurious interest promised to be paid him; and this, without the consent of the surety, discharged the surety. The case of Stallings vs. Johnson, 27 Ga. R., 564, fully sustains the Court below in holding that the contract to give time was sufficient to dis-

charge the surety; provided, the plaintiff, at the time of making it, knew that Camp was surety. The jury having found that he did know it, and their finding being sustained by the evidence, the Court did wrong to grant a new trial.

Judgment reversed.