## HILL *v.* O'NEILL *et al.*

1. If, after a promissory note payable to a named payee or bearer was signed by one as surety, the principal, before it came into the hands of one who thereafter received it as bearer in the course of negotiation before due, so altered the same as to increase the rate of interest agreed to be paid from eight to twelve per cent., such note was by such alteration rendered void as to such surety; and this is true even though, at the time it came into the hands of such bearer, he had no notice of the alteration by the principal.
2. The verdict is supported by the evidence.

Argued June 24, — Decided July 20, 1897.

Complaint on note. Before Judge Milner. Murray superior court. December 16, 1896.

Hill sued O'Neill as principal and McEntire as surety upon a promissory note for $300, dated January 14, 1889, due twelve months after date, with interest at 12 per cent. per annum,

and payable to Starr or bearer. It was endorsed by interest paid to January 1, 1891, and by receipt from Starr of $22.50 collected from Bates for McEntire, January 29, 1894. O'Neill pleaded usury. McEntire pleaded release, for that the note he signed was drawing only 8 per cent. interest, and that without his knowledge or consent said note had, since he signed it, been fraudulently changed by plaintiff from 8 per cent. to 12 per cent. interest. The jury found for the plaintiff $300 principal and $88.60 interest to February, 1896; but released McEntire. Plaintiff moved for a new trial, which was denied, and he excepted. The grounds of the motion are, that the verdict in favor of McEntire is contrary to law and evidence, and that the court erred in charging the jury as follows: "If you believe from the evidence that O'Neill procured McEntire to sign the note sued on as his security for the purpose of getting money from Hill, and that he did get the money from Hill on the note, but before delivering the note altered it so as to make the note read 12 per cent. instead of 8 per cent., without McEntire's consent or without his subsequent ratification, he would be released." The errors specified as to this charge are, (1) that it excluded from the jury the consideration of the real issue in the case, as affecting McEntire's liability, which was simply whether or not the plaintiff or any one in collusion with him or as his privy made the alteration or knew that it had been made by O'Neill after McEntire signed, and without his consent or ratification; and (2) that it placed the liability of McEntire on a different footing from that of O'Neill, assuming that the alteration was not made by Hill or by any one in collusion with him.

The testimony of Hill was: . The note was delivered to me by O'Neill just as it now is, and no change has been made in it since I received it. I spoke to McEntire about it in 1896, and he agreed to exchange me other notes for it if I would reduce the interest from 12 to 8 per cent. He knew the note was a 12 per cent. note. He afterwards paid me $22.50, and told me it would help me with the 12 per cent. in the O'Neill note. The note remained in my hands until placed with my attorneys for collection. It is very plain, from inspection of

it, that the rate of interest was changed. I saw when I took it that the rate had been changed. I did not inquire as to how it came to be changed, because I knew that they knew I was not an 8 per cent. man, that I had 12 per cent. for my money when I loaned it. I knew McEntire was security when I took it. O'Neill owed me $100 for which I had his note, and I gave him up this note and $200 more for the note in suit.

McEntire testified: The note was presented to me by O'Neill, and I signed it as security for him. It then read 8 per cent., and the alteration was made afterwards without my knowledge or consent. I never saw it from the day I signed it till the suit was brought; did not know it was drawing 12 per cent. · I saw Hill after the suit was brought, and asked him about the 12 per cent.; and he said that his counsel altered it. It is not true that I offered to exchange him other notes if he would reduce the rate of interest on this note; nor did I say when I paid him the $22.50 that this would help on the 12 per cent.

O'Neill testified: The note was written for me by Starr, and I got McEntire to go my security. When he and I signed the note it contained a stipulation for 8 per cent., and I delivered it to Hill unchanged; do not know who made the alteration. I then owed Hill $100, and when he took this note he let me have $200 more.

·*Jones, Martin & Jones*, for plaintiff.
*R. J. & J. McCamy* and *J. J. Bates*, for defendants.

ATKINSON, J. The question in this case is, whether, after a promissory note is signed by one as surety, if it is changed in respect of the amount of interest it bears, either by the principal who executed it for the purpose of negotiating it to another, or by the person to whom it is negotiated, without the consent of the surety, he is released. "The contract of suretyship is one of strict law." Civil Code, § 2968. A change of the nature of the terms of his contract, without the consent of the surety, discharges him. Civil Code, § 2971. The only question of fact which is at all doubtful in the pres-

ent case is, whether the rate of interest was changed from eight to twelve per cent. by the principal, or by the person to whom it was delivered in course of negotiation. That the change was made is not questioned, but there is nothing to indicate the assent of the surety to the change. Does the instrument sued upon, in its changed condition, express the obligation of the contract into which the surety entered? To ask the question, it seems to us, is to answer it. The surety's obligation, according to his real contract, was to pay a given rate per cent. The contract of the surety, according to the instrument sued upon in its changed condition, was to increase his liability, by imposing upon him the obligation to pay a higher rate per cent. It therefore can in no just sense be said to be the contract of the surety. In so far as the same concerns the surety, it is immaterial by whom the alteration was made. If made by the transferee of the note, it requires no argument to prove the discharge of the surety, upon the well-recognized and universally accepted principle, that one who commits a forgery can not thereby impose upon the other a legal obligation to perform the contract according to the tenor of the forged instrument; and it is equally certain that a material alteration in the obligation of the contract by one who is bound as principal, made after it is signed by the surety, will discharge the surety from liability to one who took the changed instrument bona fide and without notice. In the case of Wood v. Steele, 6 Wallace, p. 80, the Supreme Court of the United States held: "The alteration of the date in any commercial paper, though the alteration delay the time of payment, is a material alteration, and if made without the consent of the party sought to be charged, extinguishes his liability. The fact that it was made by one of the parties signing the paper before it had passed from his hands, does not alter the case as respects another party (a surety), who had signed previously." In the opinion delivered by the court through Justice Swayne, it is said: "The grounds of the discharge in such cases are obvious. The agreement is no longer the one into which the defendant entered. Its identity is changed; another is substituted without his consent; and by

a party who had no authority to consent for him. There is no longer the necessary concurrence of minds." If the proposition thus announced be generally true as respects joint makers of a promissory note, how much stronger the reason why this change should operate to discharge one who is confessedly a surety. The argument was pressed upon us with great earnestness by the learned counsel for the plaintiff in error, that if the surety, who was sued in the present case, signed this paper, and delivered it to the principal to be by him negotiated, he thus placed it within the power of the principal, by making the alteration, to perpetrate a fraud upon one who took it bona fide; and therefore that such a person ought, as against such surety, to be protected. In the case of Wait *v.* Pomeroy, 20 Mich. 425, the Supreme Court of that State, through Chief Justice Campbell, in a well-considered opinion holds, that "A memorandum written under a promissory note and qualifying its obligation is a part of the contract; and its destruction vitiates the note, even in the hands of an innocent bona fide holder." Upon the argument of that case, it would seem, from the opinion, that a similar position to that assumed in this was taken by counsel who appeared in favor of the bona fide holder. In reply to that position, the court says: "There seems at first a plausibility in the argument, that a party by signing a note with a separate memorandum beneath, puts it in the power of the holder to gain easier credit for the note, than it would be likely to gain if altered in the body. But, as it was well suggested on the argument, no one is bound to guard against every possibility of felony. And practically, it is a matter of every-day occurrence to feloniously alter negotiable paper as successfully by changes on the face as in any other way. The public are not very much more likely to be defrauded in one way than in another. There can never be absolute safety except by looking to the character and responsibility of the persons from whom such paper is received, and who are always bound to respond for the consideration if it is forged. Little *v.* Derby, 7 Mich. 325. If a party makes a contract in such a manner as is authorized by law, he has a right to object to being bound by any other. A bona fide

holder before maturity is allowed to receive the genuine contract, discharged from any equities attaching to the contract itself, as between the original parties, but he can not get a contract where none was made."

The charge of the court complained of in the present case, under the view we take of the law, was not error. It submitted the proposition fairly, that if the principal procured the surety to sign the note as his security for the purpose of getting money from the plaintiff, and he did get the money from the plaintiff on the note, but before delivering the same altered it so as to make it read twelve instead of eight per cent., without first obtaining the surety's consent thereto, or without a subsequent ratification of his act by the surety, the latter would be released. This we think a sound statement of the law touching the rights of a surety. The jury upon the trial found the facts in his favor, and by their verdict released him from liability. The trial judge, upon the motion for new trial, refused to disturb the verdict, and his ruling upon that point is approved.

*Judgment affirmed. All the Justices concurring.*