### 71196. BANK OF TERRELL v. WEBB.
(341 SE2d 258)

BEASLEY, Judge.

The Bank of Terrell sued Webb on a promissory note which he signed as a co-maker along with his son Webb, Jr. The note (#64904) was the third in a series of "renewals" for the original note in the principal amount of $10,000 at 8.30% interest. The first three notes were executed by both Webbs but thereafter, although each note referred to the next preceding note, only Webb, Jr.'s signature was required.

Webb defended on the basis that he signed only as an accommodation for his son and since the terms of the notes had changed he was no longer liable. Following discovery, Webb moved for summary judgment. After the grant of Webb's motion, the bank appealed on the ground that there remained issues of fact and Webb was not discharged from liability, as a matter of law, by renewals of the note sued upon.

1. The Bank's contention that Webb could not show by utilization of parol evidence the true capacity in which he executed the note is without merit. *Deems v. Wilson*, 114 Ga. App. 341 (1) (151 SE2d 230) (1966). See *Swida v. Adams*, 138 Ga. App. 347 (226 SE2d 139) (1976). Only as against a holder in due course is one precluded from showing the capacity in which he signed. OCGA § 11-3-415 (3). Webb could offer parol proof that he was an accommodation party and thereby establish his rights as a surety. *Griswold v. Whetsell*, 157 Ga. App. 800, 802 (2) (278 SE2d 753) (1981).

2. Besides those specifically enumerated, the UCC provisions for discharge of a party from liability on an instrument to another party includes "any other act or agreement with such party which would discharge his simple contract for the payment of money." OCGA § 11-3-601 (2). This language incorporates OCGA §§ 10-7-21 and 10-7-22 and the pertinent case law. *Sewell v. Akins*, 147 Ga. App. 454, 455 (3) (249 SE2d 274) (1978). Under OCGA § 10-7-21 a change in the terms of a contract, a "novation," without a surety's consent, discharges him. OCGA § 10-7-22 provides for a surety's release based on acts by a creditor which result in either: 1) injury to the surety or 2) increasing the surety's risk or 3) exposing the surety to greater liability. *W. T. Rawleigh Co. v. Kelly*, 78 Ga. App. 10, 14 (2) (50 SE2d 113) (1948). Of course, "[a] surety is not discharged by any act of the creditor or obligee to which he consents. Consent may be given in ad-

vance, as at the time the contract of suretyship is entered into." *Bonner v. Wachovia Mtg. Co.*, 142 Ga. App. 748, 750 (236 SE2d 877) (1977). Accord *Dunlap v. C&S DeKalb Bank*, 134 Ga. App. 893, 896 (4) (216 SE2d 651) (1975); *Union Commerce Leasing Corp. v. Beef 'N Burgundy*, 155 Ga. App. 257, 261 (3) (270 SE2d 696) (1980).

Relying on this latter principle, the bank cites two provisions in the note which it argues constitute consent: "In addition to all other rights possessed by it, the Holder, from time to time, whether before or after any of the Liabilities shall become due and payable, may . . . (c) enforce collection of any of the Collateral by suit or otherwise and surrender, release or exchange all or any part thereof, or compromise or extend or renew from time to time and for any period (whether or not longer than the original period) any indebtedness evidenced thereby. . . .

"The Holder shall be under no duty to exercise any or all of the rights and remedies given by this Note and no party to this instrument shall be discharged from his obligations or undertakings hereunder (a) should the Holder release or agree not to sue any person against whom the party has, to the knowledge of the Holder, a right of recourse or (b) should the Holder agree to suspend the right to enforce this Note or Holder's interest in the Collateral against such person or otherwise discharge such person."

In *C & S Nat. Bank v. Scheider*, 139 Ga. App. 475 (228 SE2d 611) (1976), there was a written agreement signed by Scheider whereby he guaranteed payment of a note "and all extensions or renewals thereof . . . and agree[d] that the holder . . . may from time to time extend or renew said note . . . and may grant any release, compromise or indulgences . . . all without notice to or consent . . . of the undersigned and without affecting the liability of the undersigned hereunder." It was held that this constituted advance consent to a subsequent note at a higher rate of interest. The court found no novation so as to release a guarantor despite the increase in interest rate.[1] However, the cases cited in support of the proposition involved the legal relation between the maker of a note and the payee or one in his stead. See *Georgia Nat. Bank v. Fry*, 32 Ga. App. 695 (1) (124 SE 542) (1924); *Brooks v. Jackins*, 38 Ga. App. 57 (1) (142 SE 574) (1928); *Motor Contract Div. v. Southern Cotton Oil Co.*, 76 Ga. App. 199, 202 (45 SE2d 291) (1947).

3. *Scheider*, supra, is not binding for the reasons which follow.

(a) *Scheider* focused entirely on OCGA § 10-7-21 (then Code § 103-202), "novation," and gave no effect to OCGA § 10-7-22, injury,

---

[1] Accord *C & S Nat. Bank v. Bougas*, 149 Ga. App. 722, 725 (1) (256 SE2d 37) (1979) (reversed on other grounds *C & S Nat. Bank v. Bougas*, 245 Ga. 412 (265 SE2d 562) (1980)).

increased risk to or greater liability on the surety. Here from an interest rate of 8.30% for the original note the interest rate increased to 9% on the third note, the last one signed by Webb and thereafter the one sued upon by the bank, and eventually through a series of 10 "renewals" reached 16% on the note due December 31, 1981. Obviously, the notes subsequent to the one sued upon both increased the surety's risk and had the potential to impose greater liability upon him.

Early Supreme Court decisions recognized that a change in the interest rate was sufficient to discharge a surety. See *Camp v. Howell*, 37 Ga. 312 (1867); *Parmelee v. Williams*, 72 Ga. 42 (1883); *Hill v. O'Neill*, 101 Ga. 832 (28 SE 996) (1897). Novation did not occur only where the note's renewal was at the same rate. *Partridge v. Williams' Sons*, 72 Ga. 807, 810 (1884).

(b) Webb, Sr. did not consent in advance to the interest increase. While the language of the quoted provisions in the note would include modification, it cannot be construed as being a general consent to all modifications. There is no mention of a change in interest rate and the provisions lack the all encompassing flavor of the guaranty agreement found in *Scheider*.

In context here, the bank recognized that significant modification of the original agreement had transpired when the interest rate changed because it required Webb to sign the first two renewals. In addition, suit was brought on the third note with its increased rate of interest, not on the original one. Nor was it brought on any of the subsequent notes, albeit with higher interest for the bank's benefit, which Webb, Sr. had not signed. This weighs heavily against the contention that subsequent notes did not actually amount to a change from the note sued upon so as to result in discharge of the surety. Furthermore, it is the unconsented change in potential risk or liability not the imposition of greater liability that causes the discharge. See *Upshaw v. First State Bank*, 244 Ga. 433 (260 SE2d 483) (1979); *W. T. Rawleigh Co. v. Kelly, supra.* The bank cannot simply ask us to ignore the subsequent notes as though they had no effect whatsoever on the note sued on.

(c) There is yet another reason why *Scheider* is not controlling when viewed from the historical prospective. Here, according to the proof offered there is an uncompensated surety as opposed to a guarantor in *Scheider*. While now there is no distinction between contracts of suretyship and guaranty, at the time *Scheider* was decided the cases applying the law prior to the 1981 amendment to OCGA § 10-7-1 found a legal difference between the two categories. In *Houston Gen. Ins. Co. v. Brock Constr. Co.*, 241 Ga. 460 (246 SE2d 316) (1978), the Supreme Court held the rule of strict law, that is, a surety's liability will not be extended by implication or interpretation

(now OCGA § 10-7-31), did not apply to compensated sureties. Further, while Code § 103-203 (now OCGA § 10-7-22), was directly applicable to uncompensated sureties, it was only persuasive authority as to compensated sureties or guarantors.

Therefore, *Scheider* is limited to compensated sureties or guarantors as defined prior to 1981. Also its failure to apply what is now OCGA § 10-7-22 may be regarded as an assumption that the code section's protection was not available to the guarantor. Lastly, because it involved a compensated surety the opinion did not construe the language of the guaranty under the rule of strict law and thus found the guarantor had consented by the language expressed in the agreement. Because of the described differences between the law and the factual situation here and in *Scheider*, it does not control this case.

. 4. We conclude that the provisions of the note did not cover the subsequent modifications of the interest rate, and in the absence of any other consent to an increase, such as by signature, Webb's obligation was discharged. It was not error to grant Webb's motion for summary judgment.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 7, 1986.

*C. Truitt Martin, Jr.*, for appellant.
*Robert B. Phillips*, for appellee.