A92A2370. CANTRELL v. FIRST TENNESSEE NATIONAL BANK ASSOCIATION.
(428 SE2d 368)

BEASLEY, Judge.

Appellee sued Ramsey as obligor and appellant Cantrell as guarantor to collect the unpaid balance on a promissory note. Cantrell appeals the grant of summary judgment to the bank and the denial of his cross-motion for summary judgment. Both rulings are erroneous.

The following is undisputed. On March 19, 1981, the bank loaned Ramsey $99,500 for which he executed a "single payment-interest bearing" promissory note, payable 360 days thereafter, and secured by 3,333 shares of stock in Farmbank Company. On the same date, appellant executed and delivered a letter to the bank which stated as follows: "In order to induce First Tennessee Bank N.A., Chattanooga to loan Garrard S. Ramsey, Jr. $99,500 which loan is secured by 3,333 shares of Farmbank Company, a one bank holding company located in Winchester, Tennessee, the undersigned does hereby agree to purchase from First Tennessee Bank so much of the stock pledged as security for the loan as is necessary to retire the loan amount plus interest and charges accrued, but in no instance shall the price paid be less than the book value of the stock as determined by generally accepted accounting principles. This agreement is necessary because the pledged stock is of limited marketability. If at the end of the term of the loan to Mr. Ramsey, he is unable, or does not desire to retire

the loan, I, Jake E. Cantrell, will upon demand, as stated above, purchase so much of the pledged stock as is necessary to retire the loan plus accrued interest and charges." The purpose for this repurchase arrangement was explained in a letter of the same date from Ramsey to the bank in which he acknowledged that, "all the pledged shares are of a closely held banking corporation and that there is no ready market for the sale of these shares." In the event of his default, Ramsey "consent[ed] to the sale of the pledged shares to Jake E. Cantrell for a price equal to the outstanding amount of the loan plus interest and accrued charges, but in no instance less than the book value of the stock. . . ."

In March 1982, Ramsey made payments of interest and principal reduction totaling approximately $28,000, in consideration for which the bank agreed to extend the maturity date of the loan until March 1983. In March 1983, he made payments of principal and interest totaling about $21,000, in consideration for which the maturity date of the loan was again extended another year. Appellant averred that he received no notification from the bank of the extension of the maturity date or modification of the note.

The bank notified Ramsey by letter dated June 8, 1983, that it deemed its collateral (the Farmbank shares) in jeopardy and demanded that the loan be paid in full by July 11 (later extended to August 15) or the bank would "call upon Mr. Cantrell to honor his agreement." After appellant received a copy of that correspondence, he notified the bank by letter dated August 26 that "I will expect to comply with my repurchase agreement of March 19, 1981, when you have foreclosed on the pledge agreement created by Mr. Ramsey's note of the same date payable to your bank, and are in a position to assign to me title to the shares constituting such pledge, in accordance with said repurchase agreement."

When Ramsey failed to repay the loan, the bank called upon appellant to honor the repurchase agreement. He did not do so, resulting in the present suit.

Appellant averred in opposition to summary judgment that had the bank foreclosed upon its collateral either in March 1982 or June 1983, "the fair market value would have been sufficient to repay the debt." In January 1984, the bank was placed under the receivership of the Federal Deposit Insurance Corporation at which time the "collateral became worthless."

1. Appellant asserts that the March 19, 1981 letter did not constitute a guaranty. "[A] contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal." OCGA § 10-7-1. Appellant did not obligate himself to pay Ramsey's debt. He

agreed to provide a market for the pledged collateral stock, but only to the extent of the value of the stock and only if the principal did not retire the note when the original term of the loan ended. Moreover, the letter agreement did not provide for joint and several liability of appellant with the principal, as is normally contemplated under OCGA § 10-7-1. Indeed, the bank did not ask appellant to pay the principal's debt but requested that he honor his agreement to purchase the collateral stock. These factors distinguish appellant's obligation from that of a traditional suretyship agreement.

2. Appellant claims that even if his obligation is joint and several with that of Ramsey as principal, he is statutorily discharged on two bases: OCGA § 10-7-21, because the bank's action in modifying the terms of the note constituted a novation without his consent; OCGA § 10-7-22, because the extensions of the loan by the creditor bank increased his risk or exposure to greater liability due to the marked diminution of the resale value of the collateral stock.

OCGA § 10-7-22 provides: "Any act of the creditor . . . which injures the surety or increases his risk or exposes him to greater liability shall discharge him. . . ." The language of the purported guaranty did not extend appellant's obligation to subsequent extensions or renewals of the note. On the contrary, he agreed only to repurchase the Farmbank stock "at the end of the term of the loan." During this original term, Farmbank presumably was financially stable, and thus appellant assumed little risk in agreeing to repurchase its stock. Extending the period in which appellant would be required to repurchase the stock increased his risk and had the potential of exposing him to greater liability. By delaying pursuit of its remedies without appellant's consent, the bank increased his risk. "[I]t is the unconsented change in potential risk or liability not the imposition of greater liability that causes the discharge." *Bank of Terrell v. Webb*, 177 Ga. App. 715, 717 (3) (b) (341 SE2d 258) (1986). An unconsented increase in risk is an independent ground for discharge of the surety. *Upshaw v. First State Bank*, 244 Ga. 433 (260 SE2d 483) (1979). Appellant's obligation was accordingly discharged under OCGA § 10-7-22.

We need not reach the other basis advanced.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 4, 1993 —
RECONSIDERATION DENIED FEBRUARY 23, 1993.

Jake E. Cantrell, *pro se.*
*Stewart, Melvin & House, Frank Armstrong III*, for appellee.