A00A1698, A00A1699. WINN-DIXIE CHARLOTTE, INC.
v. BRUNNER COMPANIES INCOME PROPERTIES LIMITED
PARTNERSHIP I (two cases).
(538 SE2d 152)

ELDRIDGE, Judge.

Winn-Dixie Charlotte, Inc. is a leasehold tenant in the White Horse Plaza shopping center in Greenville, South Carolina, of Brunner Companies Income Properties Limited Partnership I and sought to terminate the lease for an alleged breach. On May 27, 1999, Winn-Dixie instituted a declaratory judgment action in the Court of Com-

---

mon Pleas in Greenville County against Brunner to construe the lease to determine if it was breached, which action has not reached final judgment. On June 21, 1999, Brunner brought a rent collection suit for the month of June 1999 against Winn-Dixie in Civil Action No. 285861 in the Civil Court of the County of Richmond, State of Georgia; because the lease had no acceleration clause, Brunner filed seven additional suits for monthly rents as well. See *Richfield Capital Corp. v. Fed. Sign Div. &c.*, 222 Ga. App. 757, 758 (1) (476 SE2d 26) (1996). The identical suit filed August 17, 1999, in Civil Action No. 285971 was allowed to go into default, and judgment was taken against Winn-Dixie. Winn-Dixie filed a motion to set aside the judgment and a motion to open default, which motions were denied. On January 7, 2000, in Civil Action No. 285861, the trial court granted Brunner's motion for summary judgment. We find that the trial court properly granted summary judgment and default judgment and denied the motions to open default and to set aside judgment.

*Case No. A00A1698*

1. Winn-Dixie contends that the trial court committed several errors in granting Brunner's motion for summary judgment. We do not agree.

Paragraph 6 of the lease states that Winn-Dixie was induced to enter into the lease by Brunner through representations that as of June 1, 1987, it had Wal-Mart as an anchor tenant for 20 years in a noncancellable lease with 81,922 square feet of rental space. The evidence shows that this was and is the case. The lease does not state that Wal-Mart must operate the premises as a retail store for the entire 20-year lease, and so long as Wal-Mart occupied the space in some capacity within the provisions of the lease, this term was satisfied. Wal-Mart now operates the property as a service/warehouse. See generally *Valley Pub. Svc. Auth. v. Beech Island Rural Community Water Dist.*, 319 S.C. 488, 492-493 (462 SE2d 296) (App. 1995). However, in February 1999, Wal-Mart closed its retail store, moved it to a rival shopping center, but remained a tenant in good standing under its lease. All the parties considered Wal-Mart a significant anchor tenant that draws customers to the shopping center.

Winn-Dixie was the drafter of the lease, and the lease had no express continuous occupancy clause as to the operation of a retail space by Wal-Mart as a co-tenant; the clause was an inducement for Winn-Dixie to lease. After Wal-Mart ceased to operate its store at the White Horse Shopping Center, it no longer drew customers to the shopping center. From the plain, clear, and unambiguous language, the clause did not constitute a co-tenancy clause between Wal-Mart and Winn-Dixie in its ordinary meaning, and the courts must look to

those terms alone to find the intent of the parties. See *Moser v. Gosnell*, 334 S.C. 425, 430 (513 SE2d 123) (App. 1999); *Koontz v. Thomas*, 333 S.C. 702, 707-708 (511 SE2d 407) (App. 1999); *Lindsay v. Lindsay*, 328 S.C. 329, 336 (491 SE2d 583) (App. 1997). To "occupy," which refers by its clear, plain, and unambiguous language to that point in time when Winn-Dixie executed the lease, does not mean to "continuously operate a retail store or service center." The court cannot impose a continuous operation condition by implication. A continuous operation term may be implied between a landlord and a tenant when the rent is a minimum fixed rent, additional rent is contingent upon revenue in a retail tenant, and the landlord seeks ejectment. But it cannot be implied as to an anchor tenant by another tenant, absent express language to that effect. *United Dominion Realty Trust v. Wal-Mart Stores*, 307 S.C. 102, 105-106 (413 SE2d 866) (App. 1992); *Columbia East Assoc. v. Bi-Lo, Inc.*, 299 S.C. 515, 521-522 (386 SE2d 259) (App. 1989). See also *Piggly Wiggly Southern v. Heard*, 261 Ga. 503 (405 SE2d 478) (1991); *DPLM, Ltd. v. J. H. Harvey Co.*, 241 Ga. App. 219 (526 SE2d 409) (1999); *Kroger Co. v. Bonny Corp.*, 134 Ga. App. 834 (216 SE2d 341) (1975).

Here, there is nothing ambiguous about the plain and clear meaning of this lease, and the courts must apply such meaning. See *C.A.N. Enterprises v. S.C. Health & Human Svcs. Financial Comm.*, 296 S.C. 373, 378 (373 SE2d 584) (1988); see also *Columbia East Assoc. v. Bi-Lo, Inc.*, supra at 520.

2. Paragraph 7 provided that, without Winn-Dixie's written consent, only retail or "service stores" will be allowed in the shopping center. After February 1999, Wal-Mart used the White Horse Plaza store as a nonretail warehouse. However, Brunner disputed that the use by Wal-Mart as a warehouse did not come within the meaning of "service store." Further, paragraphs 6 and 7 were in no way linked or required to be construed together.

(a) If Wal-Mart used the White Horse Plaza store in violation of its lease and the lease of Winn-Dixie, then there exists a factual issue whether or not Winn-Dixie gave notice of a demand to cure such partial breach of the terms of the lease or whether Winn-Dixie waived such partial breach by not asserting it. While allowing Wal-Mart to use the store as a warehouse might constitute a partial breach of its lease by Brunner's failure to enforce the lease for Winn-Dixie's protection, such a partial breach would not excuse Winn-Dixie from its duty to perform and pay rent. At most, Winn-Dixie would have a factual issue as to a set off for any damages that such use caused to its leasehold interest.

(b) Although Winn-Dixie was liable for the rent due, so that summary judgment was proper, factual issues for trial remained as to whether or not Wal-Mart's use of the store as a warehouse factually

came within use as a "service store" within paragraph 7 and if not, then what if any damages should be set off against the rent due.

### Case No. A00A1699

3. Winn-Dixie contends that the trial court erred in denying its motion to open default. We do not agree.

The trial court allowed Winn-Dixie to file its motion to open a default under OCGA § 9-11-55 (b), because it had not given Winn-Dixie proper notice of the entry of default judgment under OCGA § 15-6-21, which would allow timely appeal. See *Cambron v. Canal Ins. Co.*, 246 Ga. 147 (269 SE2d 426) (1980); *Vangoosen v. Bohannon*, 236 Ga. App. 361 (511 SE2d 925) (1999). In considering the merits of the motion, the trial court pointed out that Winn-Dixie should have been on notice of the identical suits for successive months' rent, and instead of identical suits being a meritorious reason to open default, such serial suits for each month's rent should have made Winn-Dixie more vigilant. The trial court found that the sole reason for default was the negligence of the movant, so that there was no providential cause, excusable neglect, or a proper case. See OCGA § 9-11-55 (b); *Tauber v. Community Centers Two*, 235 Ga. App. 705, 706-707 (3) (509 SE2d 662) (1998); *Patel v. Gupta*, 234 Ga. App. 441 (507 SE2d 763) (1998).

4. Winn-Dixie set forth that the trial court erred under OCGA § 9-11-60 (d) (3) and failed to exercise its discretion within term to set aside the default judgment. We do not agree.

Winn-Dixie contends that there exists a nonamendable defect upon the face of the judgment: "the provisions of Paragraph 6 of the lease agreement do not provide a co-tenancy clause and the same do not require Wal-Mart to remain open for business to the public in order for the lease to continue to be in full force and effect." In light of Division 1, such contention lacks merit and is controlled by Division 1.

The inherent power of a trial court to set aside any judgment within term is a matter of the exercise of sound discretion. Discretion means that the trial court, for any meritorious reason, could have set aside the judgment. Refusal to set aside a judgment, absent a clear abuse of discretion, will not be reversed by this Court. *T. J. Brooklyne, Inc. v. Sullivan 75 L. P.*, 239 Ga. App. 588, 589 (521 SE2d 644) (1999). The trial court obviously realized that it had the inherent power to set aside a judgment because it exercised such power to set aside the October 21, 1999 judgment where Winn-Dixie had not received timely notice to preserve its appeal rights. Having demonstrated that it had such inherent power by setting aside the earlier default judgment, the trial court considered the OCGA § 9-11-55 (b)

motion on its merits, denied it, and reentered the default judgment on January 10, 2000. Legally and factually, *Piggly Wiggly Southern v. McCook*, 216 Ga. App. 335, 337 (1) (454 SE2d 203) (1995), has no application in this case because there, "it is apparent that the trial court believed that the default judgment could not be set aside unless the criteria of OCGA § 9-11-60 (d) were satisfied." Here, the trial judge demonstrated not only that he had such power, but he exercised such power.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 8, 2000 —
RECONSIDERATION DENIED AUGUST 28, 2000

*Kilpatrick Stockton, Robert P. Sentell III, Mark B. Williamson,* for appellant.

*Dye, Tucker, Everitt, Long & Brewton, John B. Long,* for appellee.