A04A1931. SUPERVALU, INC. v. KR DOUGLASVILLE, LLC.
A04A1932. KR DOUGLASVILLE, LLC v. DELHAIZE THE LION AMERICA, INC. et al.
(613 SE2d 154)

SMITH, Presiding Judge.

These appeals arise out of the trial court's denial of the motions for summary judgment filed by both parties in a suit on a guaranty. In 1988, JDN Enterprises as landlord entered into a lease agreement with Super Discount Markets as tenant to operate a Cub Foods store on its premises, a shopping center. KR Douglasville, LLC is the successor in interest to JDN Enterprises. SuperValu, Inc. and Delhaize The Lion America, Inc. were guarantors on the lease. The tenant allegedly defaulted on the lease agreement, and KR Douglasville brought this guaranty action against SuperValu.[1] The trial court denied motions for summary judgment filed by both parties. The parties' applications for interlocutory review were granted, and these appeals ensued. Each party appeals from the denial of its motion for summary judgment, SuperValu in Case No. A04A1931, and KR Douglasville in Case No. A04A1932. As more fully discussed below,

---

[1] A settlement was reached as to Delhaize, which also was named as a defendant. Delhaize is not a party to this appeal.

although we disagree with SuperValu's argument that KR Douglasville breached a co-tenancy provision of the lease, we conclude that SuperValu was discharged from its obligations by novations to the 1988 lease agreement that occurred without its consent. We therefore reverse the trial court's denial of summary judgment to SuperValu, and we affirm the denial of summary judgment to KR Douglasville.

1. We first consider SuperValu's contention that KR Douglasville breached a co-tenancy provision contained in Section 9.5 of the 1988 lease, which provides in relevant part:

> Landlord represents and warrants to tenant, and this lease has been entered into by tenant in reliance upon the representation and warranty of landlord, that the shopping center will contain a Wal-Mart store containing not less than approximately 95,000 square feet of floor area . . . under a lease for a term of not less than twenty (20) years. Prior to commencement of construction of the shopping center, landlord shall deliver to tenant satisfactory evidence of the existence of such lease. In the event that for any reason whatsoever, Wal-Mart Stores, Inc. shall fail to commence operation of a Wal-Mart store in the shopping center in accordance with its lease, tenant shall have the right at any time after the one hundred eightieth (180th) day following the date of such failure, to cancel this lease and be released from all further obligations and liabilities hereunder.

A Wal-Mart store commenced operation, serving as an anchor tenant for ten years, from 1990 until it closed in 2000. Super Discount then closed the Cub Foods store and filed for bankruptcy protection.

SuperValu argues that Section 9.5 unambiguously requires the landlord to contain an operational Wal-Mart store for 20 years, that the landlord breached this provision, and that this breach relieved it of its guaranty obligations. KR Douglasville argues that Section 9.5 is an unambiguous "opening co-tenancy provision," that the requirements of this subsection were met when the Wal-Mart store opened, and that there is no continuing co-tenancy requirement. We agree. "A continuous operation term may be implied between a landlord and a tenant" under certain conditions. *Winn-Dixie Charlotte v. Brunner Cos. &c. Partnership*, 245 Ga. App. 672, 674 (1) (538 SE2d 152) (2000). Such a term, however, "*cannot* be implied as to an anchor tenant by another tenant, absent *express language* to that effect. [Cits.]" (Emphasis supplied.) Id. Section 9.5 does not contain express language showing a requirement of a continuing co-tenancy. As argued by KR Douglasville,

> [i]f the parties had intended for the eventual termination of Wal-Mart's operations — as opposed to a failure to open — to act as a release of the tenant, they could have said so. The lease has no such provision. Therefore, it is plain from the language of Section 9.5 that the parties contemplated that only a failure to *open* a Wal-Mart store would result in a breach of the lease.

It is undisputed that a Wal-Mart commenced operation as required by the lease. The requirements of Section 9.5 were met.

2. Our conclusion above that the landlord did not breach Section 9.5 does not end our inquiry, however. OCGA § 10-7-21 provides that "[a]ny change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him." The Georgia Supreme Court has stated that "any change, whether to the surety's benefit or detriment is a novation which discharges the surety." *Upshaw v. First State Bank,* 244 Ga. 433, 435 (260 SE2d 483) (1979).

The record shows that the tenant and the landlord made changes to the terms of the lease without the consent of SuperValu. In 1991, the tenant signed an amendment deleting the landlord's obligation under the original lease to build an additional road allowing access to the premises. In 1992, the tenant waived and released the landlord from any breach of the restrictive covenants section of the lease, which prohibited the landlord from leasing space to any business operating as a "supermarket, hypermarket, or any retail or quasi-retail operation (similar to Pace, Macro, or Sam's Wholesale Club) selling a substantial amount of food items for off-premises consumption." Finally, in 1994, the tenant and the landlord agreed to the leasing of space to a restaurant. This constituted a breach of Section 9.2 of the lease, a "covenant against certain uses" providing "that no restaurant shall be permitted within two hundred feet of the premises."

KR Douglasville argues that after execution of the amendment in which the tenant waived the restrictive covenants provision, "the tenant and the guarantors signed an estoppel letter in connection with the refinancing of the shopping center with the lender" and that this letter "contains language expressly referencing and identifying each of the . . . lease amendments." It goes on to contend that by signing this document, "the guarantors had knowledge of and consented to each of the . . . lease amendments."

We do not agree. In signing the notice of assignment, SuperValu stated:

By signing above, SuperValu, Inc. is merely acknowledging receipt of this letter. SuperValu has not independently verified the acknowledgment made by Super Discount Markets, Inc. above, so it is not making any representations about the accuracy of that acknowledgment. SuperValu is not the tenant under the lease, but under a guaranty agreement dated April 30, 1989, SuperValu has guarantied some of the obligations of Super Discount Markets, Inc., under the lease. *By signing above, SuperValu is not agreeing to increase its obligations under the guaranty agreement.*

(Emphasis supplied.) Unlike the facts of *Mauldin v. Lowe's*, 146 Ga. App. 539 (246 SE2d 726) (1978), cited by KR Douglasville, in which the surety consented to a novation, this acknowledgment in no manner shows that SuperValu consented to any changes to the 1988 lease. SuperValu acknowledged receipt of the letter, and more importantly, it expressly declined to accept any increased responsibilities or obligations under the guaranty agreement.

Contrary to KR Douglasville's contention, the amendments constituted material changes in the provisions of the lease. One removed the landlord's obligation to provide additional access to the property, and others waived the landlord's liability for leasing portions of the property to competing businesses. As a consequence of these novations, SuperValu as surety was discharged from its obligations. *Upshaw*, supra, 244 Ga. at 435. See also *Builder Marts of America v. Gilbert*, 257 Ga. App. 763, 765-766 (572 SE2d 88) (2002) (guarantor "did not expressly consent to a renewal or modification of the original contract"). "An unconsented increase in risk is an independent ground for discharge of the surety. [Cit.]" *Cantrell v. First Tennessee Nat. Bank Assn.*, 207 Ga. App. 458, 460 (2) (428 SE2d 368) (1993). SuperValu was entitled to summary judgment.

3. KR Douglasville argues that SuperValu is judicially estopped from denying liability by prior admissions in United States Bankruptcy Court. Under the doctrine of judicial estoppel, a party will not be permitted to take a position in a state court proceeding that is inconsistent with a position taken in a bankruptcy proceeding. *IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 766 (573 SE2d 58) (2002). It appears to be undisputed that in 2001, Super Discount filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. SuperValu subsequently filed a proof of claim in the amount of $33,376,465.55, and the Bankruptcy Court ultimately allowed SuperValu an unsecured claim in the amount of $8,000,000. The chief financial officer of Super Discount Market testified by affidavit, however, that the only claims against Super Discount Market's assets maintained by SuperValu in the

bankruptcy proceeding related to two bank notes unrelated to the Cub Foods store, that claims related to the Cub Foods "lease were relinquished through negotiations with [its] Creditors' Committee" and that SuperValu would "not receive any distributions from [Super Discount's] bankruptcy liquidation as it relates to the lease for the Cub Foods Store."

Application of the doctrine of judicial estoppel to a particular case depends on three factors. First, the party's "later position must be 'clearly inconsistent' with its earlier position." *IBF*, supra, 275 Ga. at 766-767. Second, "the party must have succeeded in persuading a court to accept the party's earlier position," because "absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations." (Citation and punctuation omitted.) Id. at 767. And third, a court must consider whether the party seeking to assert "an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." (Citation and punctuation omitted.) Id. SuperValu presented undisputed evidence that it will not receive any distributions from the tenant's bankruptcy liquidation with respect to the lease at issue in this case. Consequently, we must agree with SuperValu that its position in this case is not inconsistent with its position in bankruptcy court and that it will not derive an unfair advantage over KR Douglasville if the terms of the lease agreement are enforced.

SuperValu was entitled to summary judgment on the ground that the landlord and tenant executed material novations of the lease without its consent. The trial court's order in Case No. A04A1931 is therefore reversed. Conversely, KR Douglasville was not entitled to summary judgment, and the trial court's order in Case No. A04A1932 is affirmed. We need not reach the parties' remaining contentions.

*Judgment reversed in Case No. A04A1931. Judgment affirmed in Case No. A04A1932. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 22, 2005 —
RECONSIDERATIONS DENIED APRIL 12, 2005 —

*Epstein, Becker & Green, Jeffrey Y. Lewis, Holland & Knight, James M. Hunter*, for SuperValu, Inc.

*Schreeder, Wheeler & Flint, David H. Flint, Alexander J. Simmons, Jr., Nathan M. Wheat, Timothy C. Batten, Sr.*, for KR Douglasville, LLC.