A05A1656. THOMAS-SEARS v. MORRIS.
(628 SE2d 241)

BERNES, Judge.

Appellant Shelley J. Thomas-Sears appeals from the trial court's orders denying her motion for summary judgment and granting summary judgment to appellee Michael Morris without opinion. For the reasons that follow, we affirm.

> On appeal from the grant [or denial] of summary judgment[,] this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations and punctuation omitted.) *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002).

So viewed, the undisputed facts in this case reveal that Thomas-Sears, a licensed real estate agent, executed a sales contract with third-party Greg Sorrentino under which Sorrentino was to purchase Thomas-Sears' real property, which consisted of a house and the adjacent land (the "Property"). Thomas-Sears owned the Property subject to a mortgage with Ohio Savings Bank.

Pursuant to the terms of the sale, Sorrentino was to pay a certain amount of cash up front, as well as obtain financing from a third-party lender. At the time of the anticipated closing in June 2001, which had originally been scheduled to take place in April 2001, Sorrentino had not yet secured the necessary third-party financing to

purchase the Property. Thomas-Sears agreed to temporarily "loan" Sorrentino the amount outstanding on the Ohio Savings mortgage via a "Wraparound Balloon Note" (the "Note"), in order to give Sorrentino additional time to obtain financing. Her decision to do so was based, at least in part, upon Sorrentino's representation that Michael Morris would personally guarantee the Note.

Pursuant to the terms of the Note, while no money actually changed hands, Thomas-Sears agreed to "pay" Sorrentino $424,600, at an annual interest rate of nine percent, and Sorrentino agreed to make monthly payments to Thomas-Sears who would, in turn, forward the same to Ohio Savings to satisfy her obligations on that mortgage. Sorrentino's monthly payments were to be made during the months of August through December 2001, and Sorrentino was to make a final balloon payment of all unpaid principal and interest under the Note on January 1, 2002. The Note stated that, "[i]n addition to the protections given to the Note Holder under this Note, a . . . Security Deed . . . protects the Note Holder from possible losses which might result if [Sorrentino] do[es] not keep the promises which [he made] under this Note." The Note provided for no contingencies or liquidated damages of any kind.

Prior to the closing of the transaction at issue, the attorneys for Thomas-Sears and Sorrentino, together with Sorrentino himself, went to the office of Morris. Morris signed a handwritten guaranty, written on the bottom of the Note itself, which stated:

> Guarantor:
> /s Michael Morris
> Michael Morris, guarantor, individually solely as guarantor hereunder of this Baloon [sic] Note, the principal and interest of which include the principal and interest under and secured by that security deed recorded Deed Book 28994, page 299, Fulton County GA Public Records. See additional provisions* re the application of principal and interest payable hereunder to the said indebtedness secured Deed Book 28994 p. 299 above described.
> *in the Wraparound Second Security Deed securing this Wraparound Baloon [sic] Note.

On June 28, 2001, at the closing of this transaction, Sorrentino did not have sufficient cash to fully satisfy the cash terms of the sale agreement. As a result, Sorrentino and Thomas-Sears executed what they titled an Escrow Agreement, drafted by Thomas-Sears' attorney, which conditioned the purchase and sale of the Property on the occurrence of several enumerated contingencies. Specifically, the

Escrow Agreement provided that "a series of events must be completed before the final contemplated full performance of the purchase and sale can be achieved." Those events included the "execution of a loan to Greg Sorrentino from a lender of his choosing to be obtained during the [duration of] the wrap around balloon note," the "execution of a note from Greg Sorrentino in the principal amount of $424,600 with a 01/01/02 maturity date and to be guaranteed by Michael Morris," and "the execution of a wrap around [security deed] from Greg Sorrentino to Shelley J. Thomas-Sears [sic] secured only by [the Property]." It also predicated the purchase and sale upon Sorrentino obtaining funds sufficient to complete the cash terms of the sale agreement. Finally, the Escrow Agreement included the following liquidated damages provision in the event that the enumerated contingencies were not met: "If contemplated completion of this escrow agreement fails to occur, [Thomas-Sears] shall keep $20,000.00 as damages and refund the remainder of buyers cash outlay at closing. . . ."

At the June 28, 2001 closing, in addition to executing the Escrow Agreement, Sorrentino and Thomas-Sears both initialed the handwritten guaranty signed by Morris two days earlier, and Sorrentino signed the Note and the Wraparound Second Security Deed (the "Security Deed"). The Security Deed expressly referenced the Note "which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1st, 2002."

Sorrentino did succeed in obtaining cash sufficient to satisfy the cash terms of the sale and Escrow Agreement, took possession and title to the Property, and made the initial monthly payments pursuant to the terms of the Note. Thereafter, however, he failed to secure financing to make the final balloon payment on the Note, and became in default. In the instant lawsuit, Thomas-Sears sought recovery for the balance of the Note from Morris, as guarantor.

1. *Grant of Summary Judgment to Morris.* Thomas-Sears asserts that the trial court erred when it granted Morris summary judgment and released him from the guaranty. We cannot agree. Under Georgia law, a change in the nature or terms of a contract is considered a novation and discharges the guarantor[1] in the absence of the latter's consent. OCGA § 10-7-21. However, contrary to Morris' assertion, the change must be material in order to result in a discharge. *American Express Travel Related Svcs. Co. v. Berlye*, 202 Ga. App. 358, 360 (1) (414 SE2d 499) (1991); *Gilbert v. Cobb Exchange Bank*, 140 Ga. App. 514 (231 SE2d 508) (1976); *Whitmer Co. v. Sheffield*, 51 Ga. App. 623

---

[1] Georgia law does not distinguish between contracts for surety and contracts for guaranty. OCGA § 10-7-1.

(181 SE 119) (1935). If the change is material, it releases the guarantor, irrespective of whether the change is to the benefit or the detriment of the guarantor. *Upshaw v. First State Bank*, 244 Ga. 433, 435 (260 SE2d 483) (1979) ("[T]his court has long held that any change, whether to the surety's benefit or detriment[,] is a novation which discharges the surety.") (citations omitted); *SuperValu v. KR Douglasville, LLC*, 272 Ga. App. 710, 712 (2) (613 SE2d 154) (2005).

In the transaction at issue, the Note, the Security Deed, and the Escrow Agreement must be read together, since they were executed contemporaneously by Sorrentino and Thomas-Sears and involve the same subject matter. See *Sofran Peachtree City v. Peachtree City Holdings*, 250 Ga. App. 46, 50 (550 SE2d 429) (2001) ("When an agreement consists of multiple documents that are executed at the same time and during the course of a single transaction, those documents should be read together.") (citations and footnote omitted). Moreover, since the documents refer to and incorporate each other, the fact that Morris signed the handwritten guaranty on the bottom of the Note two days prior to the closing does not change this result. *Town Center Assoc. v. Workman*, 227 Ga. App. 55, 57 (1) (487 SE2d 624) (1997) (declining to hold that a guaranty that was signed two weeks before the execution of the underlying contract released the guarantors when the guaranty and the underlying contract referenced and incorporated each other); *Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.*, 213 Ga. App. 481, 481-482 (1) (445 SE2d 297) (1994) (construing an unsigned guaranty in conjunction with a signed addendum, despite the guarantor's assertion that he did not see the guaranty until after he signed the addendum, because each of the documents sufficiently referenced the other).

We cannot escape the conclusion that the execution of the Escrow Agreement materially changed Sorrentino's, and thus Morris', obligations under the Note. The enumerated conditions set forth in the Escrow Agreement represented the first time that payment of the Note was contingent upon Sorrentino obtaining financing. Neither the Note nor the Security Deed contained any such contingency. Furthermore, the Escrow Agreement added a liquidated damages provision that materially altered Morris' liability exposure.[2] Both of these changes were material, and either was sufficient to constitute a novation to the Note. See *Upshaw*, 244 Ga. at 434-435 (holding that a change in the amount owed by the principal results in a novation

---

[2] We recognize that the provisions of the Escrow Agreement were not strictly adhered to by either Sorrentino or Thomas-Sears, and we make no determination as to what impact this may have on Thomas-Sears' ability to recover from Sorrentino, if at all, in law or equity under the Note and/or the Escrow Agreement. Our focus ends with the determination that the execution of the Escrow Agreement in and of itself changed the material terms of the underlying Note.

that releases the guarantor, even when the guarantor's potential liability was contractually capped); *Long Tobacco Harvesting Co. v. Brannen*, 99 Ga. App. 541, 544 (2) (109 SE2d 90) (1959) (recognizing that an absolute promise to pay which is later made contingent represents a novation to the original agreement).

It is undisputed that the Escrow Agreement that effected these changes was executed without Morris' knowledge or consent, and it is immaterial that the changes potentially operate to the benefit of Morris. Rather, "it is the unconsented change in potential risk or liability not the imposition of greater liability that causes the discharge." (Citations omitted.) *Bank of Terrell v. Webb*, 177 Ga. App. 715, 717 (3) (b) (341 SE2d 258) (1986). Accordingly, Morris was released from the guaranty and summary judgment in his favor was proper.

2. *Denial of Summary Judgment to Thomas-Sears.* Because Morris was released from the guaranty, it follows that the trial court did not err when it denied Thomas-Sears summary judgment as to Morris' obligation to pay the outstanding balance under the Note.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED MARCH 10, 2006.

*Perrie & Cole, Robert L. Bunner, C. Terry Blanton*, for appellant.
*Alston & Bird, Elizabeth A. Price, Daniel F. Diffley, Charles E. Leonard*, for appellee.