Lott *vs.* Dysart *et al.*

---

JOHN G. LOTT, Guardian, plaintiff in error, *vs.* JOSEPH L. DYSART *et al.*, defendants in error.

1. Where, in a suit pending on a debt, dated before June 1, 1865, the plaintiff had filed the affidavit required by the Act of October 13, 1870, and on the trial failed to show that the taxes due upon the debt had been paid for a part of the time since the debt was contracted, but proposed in open Court, then and there, to pay into Court for the use of the State the taxes still due:

*Held,* That it was error in the Court to deny him the right so to pay the full amount of taxes due. Such a payment would have been a substan-

Lott *vs.* Dysart *et al.*

tial compliance with the Act of October 13, 1870, and the plaintiff would have been entitled to a judgment on his debt.

2. Where a note was given for land, to an administrator, and he turned the note over as assets to the guardian of the sole heir-at-law, the maker thereof giving the guardian a new note, with the administrator as security, this was not such a novation of the original debt for the land as that the note is not still a debt contracted for the purchase of the land.

Relief Act of 1870. Tax. Novation. Before Judge PAR-ROTT. Bartow Superior Court. September Term, 1871.

Martin Lott died intestate. Vincent administered upon his estate and sold Lott's land to Dysart, and took his note, with security, for the purchase-money. Dysart was still in possession of the land. Savannah Lott was Martin Lott's sole heir, and when Vincent settled with her he gave up Dysart's said note and took from him Dysart's other note, with Vincent as security, in lieu of the first note, and gave that to John G. Lott, Savannah Lott's guardian, as part of the estate. This note was made in 1860. Lott, guardian, sued upon this note and suit was pending when the Relief Act of 13th October, 1870, was passed. Plaintiff filed an affidavit as to the payment of taxes on the debt, as required by said Act, within the time required. On the trial, plaintiff proved the payment of taxes for each year since the making of the contract, except two years. To cover this deficiency, plaintiff proposed to deposit with the Clerk of the Court a sum of money, for the use of the State, sufficient to cover the tax of said two years.

These facts being before the jury, defendant's counsel contended that plaintiff could not recover because of the non-payment of taxes. Plaintiff's counsel rejoined that the suit was for purchase-money of land, of which defendant was still in possession. The Court ruled that the second note was such a novation as to take the case out of that exception to the Relief Act. Plaintiff's counsel stood also upon his offer to make said deposit with the Clerk to pay the taxes. But the

Lott *vs.* Dysart *et al.*

Court ruled that that would not cure the non-payment of taxes. The jury found that the taxes had not been paid, as required by said Relief Act, and the case was dismissed. Said rulings are assigned as error.

H. P. BELL, for plaintiff in error.

A. JOHNSON, for defendant.

McCAY, Judge.

1. As we have ruled very often this Act of October 13th, 1870, must, to be sustained at all, stand as an exercise of the power of the Legislature to enforce the payment, to the State, of the taxes legally due it. It is not for the benefit of the defendant. True, it works to his advantage, if the plaintiff fails to comply with it, as does the Act of Congress requiring notes, etc., to be stamped. But here the plaintiff had complied with that section of the Act requiring him to file his affidavit within the six months, and the only question before the jury was the right of the plaintiff to a verdict. This the Act says he shall not have, unless he makes it plainly appear to the jury that all legal taxes have been paid. He proposes to pay the tax into Court. Why should he not be permitted to do this? There is no dispute as to the amount. The face of the note determines that—and when paid into Court it is then for the benefit of the State. The State gets in this way its tax, the purpose of the law. The defendant is not hurt; it is none of his business. The refusal of the law to permit a judgment to go, is not for his benefit but to compel the plaintiff to do his duty, not to the defendant, but to the State. Were there any question as to the value of the note or debt, we should hesitate, since the proper officer to receive the return would be the revenue officers. But that question is not here. The Court is the State's guardian of its rights, and it may fairly be trusted to see to it that the money paid in goes to the proper custodian of it.

Lott *vs.* Dysart *et al.*

2. It would be pushing the law of novation very far to treat this change of papers as a novation. The original payee was only the agent of the minor, and sold the land as his agent. In turning over the debt to the guardian he is only performing the duties of his trust. It was originally payable to *one agent* of this minor; it is now made payable to another, the guardian. The change of payees was simply this, the substitution of one agent for another. In both cases the minor was the beneficiary. The debtor and creditor are the same in both cases. It is well settled that the taking a security, or change of one, is not a novation. This note was still for the land. We think, therefore, the Court was wrong in both these grounds, and reverse the judgment.

Judgment reversed.

WARNER, Chief Justice, concurring.

The majority of the Court hold in this case that, although the plaintiff failed to prove at the trial that the taxes due upon his debt had been regularly given in, and the tax paid for each year, as required by the Act of 1870, still, he might then, in open Court, pay the taxes due on his debt for *the use of the State,* and that such payment of taxes would be a substantial compliance with the provisions of the Act. Such a construction and interpretation of the Act of 1870 is not, in my judgment, authorized either by the words or the true intent and meaning of the Act. The Act of 1870, is entitled, "An Act to extend the lien of set-off and recoupment as against debts contracted before the first day of June, 1865, and to *deny to such debts the aid of the Courts until the taxes thereon have been paid.*" How, and in what manner do the enacting clauses of the Act declare that the taxes due on such debts shall be given in and paid, so as to entitle the plaintiff to the aid of the Courts to collect his debt? The first section of the Act declares, "That in all suits pending, or hereafter to be brought, in or before any Court of the State, founded upon any debt, or contract, or cause of

action, made or implied before the 1st day of June, 1865, or upon any other debt or contract in renewal thereof, it shall not be lawful for the plaintiff to have a verdict or judgment in his favor until he has made it clearly appear to the tribunal trying the same, that all legal taxes chargeable by law upon the same have been *duly paid for each year since the making or implying of said debt or contract.*" The second section of the Act declares, that, "In every suit now pending, or hereafter brought, it shall be the duty of the plaintiff, within six months after the passage of this Act, if the suit be pending, and at the filing of the writ if the suit be hereafter brought, to file with the Clerk of the Court of justice an affidavit, if the suit is founded on any debt or contract as described in section one, that all legal taxes chargeable by law upon such debts or contracts have been *duly paid,* or the income thereon *for each year* since the making of the same, and that he expects to prove the same upon the trial; and upon failure to file such affidavit as herein required, said suit shall, on motion, be dismissed." The third section of the Act declares that, "In suits upon such contracts, in every case, the *burden of proof* showing that the taxes *have been duly paid* shall be upon the party plaintiff, without plea by the defendant, and the defendant may, upon this point, cross-xeamine witnesses, introduce proof in denial and rebuttal to the plaintiff's proof, without plea." The fourth section of the Act declares that, "In every trial upon a suit founded upon any such debt or contract as described in this Act; provided, that said debt has been *regularly given in* for taxes, and *the taxes paid,* shall be *a condition precedent to a recovery on the same;* and in every such case, if the tribunal trying is not clearly satisfied that said taxes have been *duly given in and paid,* it shall so find and said suit shall be dismissed."

If this Act be a valid constitutional Act, as the majority of the Court hold it is, then it is quite clear to my mind that the taxes due on the debt must be proved at the trial on the

part of the plaintiff, to have been *duly* and *regularly given in* by him and paid *for each year*, as a *condition precedent* to his right to recover the same in the Courts of the State. If the assumption of the majority of the Court be true, that the Act was a *revenue measure*, to increase the revenues of the State by taxing this particular class of debts for that purpose, and that the payment of the tax due thereon at the trial by the plaintiff is a substantial compliance with the object an intent of the Act, then the Act is void, as being in violation of the Constitution of this State, which declares : " Nor shall any law or ordinance pass which refers to more than one subject-matter, or contains matter *different* from what is expressed in *the title thereof.*" There is not one word in *the title* of this Act about *raising revenue for the State*, or going to show that such was the object and intention of the Act ; but, on the contrary the title of the Act is, " to extend the lien of set-off and re-coupment, as against debts contracted before the first day of June, 1865, and to deny to such debts the aid of the Courts until the taxes thereon have been paid." The plain intent of the Act was to deny to the holders of a particular specified class of debts *all remedy* for the collection thereof in the Courts of the State until the taxes thereon had been paid, whether the debts were solvent or *insolvent;* in other words, to practically *outlaw* that particular specified class of debts from the Courts, and the enacting clauses of the Act prescribe *the manner of doing it.* The discovery by our modern judicial Neckars that this Act was intended as a *revenue measure*, is a brilliant afterthought, not contemplated by the Legislature which enacted it. Their intention, as everybody knows, and which is apparent on the face of the Act itself, was to kill and destroy this particular class of debts by depriving the holders thereof of *all remedy* to enforce the collection of them in the Courts, under *the pretext* that the taxes due thereon had not been paid. This pretext of raising revenue is about as sound as the pretext of the Pope of Rome for selling indulgences to raise revenue.

Lott *vs.* Dysart *et al.*

But the Act is void, because it violates the tenth section of the first article of the Constitution of the United States, which declares that "no State shall pass any law impairing the obligation of contracts." The rule applicable to this question was clearly and explicitly stated by the Supreme Court of the United States in the case of Green *vs.* Biddle, 8 Wheaton's Reports, 1 : " The objection to a law on the ground of its impairing the obligation of a contract can never depend upon the extent of the change which the law effects in it. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing *conditions* not expressed in the contract, or dispensing with the performance of those which are, however minute or apprrently immaterial in their effect upon the contract of the parties, impairs its obligation." This rule was recognized and adopted by this Court in *Winter vs. Jones*, 10 Georgia Reports, 190. In Van Hoffman *vs.* The City of Quincy, 4 Wallace's Reports, 550, the Supreme Court of the United States, in interpreting this clause of the Constitution, say, that "one of the tests that a contract has been impaired is, that *its value* has by legislation been *diminished*. It is not, by the Constitution, to be impaired at all. This is not a question of degree or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force." Again, the Court say in that case : "A *right* without a *remedy* is as if it were not, and for every beneficial purpose may be said not to exist. A different result would leave nothing of the contract but an abstract right of no practical value, and render the protection of the Constitution a *shadow* and a *delusion*. The ideas of validity and remedy are *inseparable*, and *both* are parts of the obligation which is guaranteed by the Constitution against invasion."

Does the Act of 1870 *invade* the legal right of the plaintiff to enforce his contract, as the same existed under the law at the time it was made? Does the Act of 1870 impose *conditions* upon the legal right of the plaintiff to enforce the ob-

ligation of the contract which did not exist under the law when the contract was made? Does the Act of 1870, which requires the plaintiff to prove on the trial that his debt has been regularly given in for taxes, and the taxes paid, as a *condition precedent* to his legal right of recovery of the same in the Courts of the State, diminish the value of his debt and contract?

Prior to the Act of 1870, and at the time plaintiff's debt was contracted, the plaintiff was required, under the general tax law of the State, to make a return of his taxable property to the tax receiver of the county of his residence under oath, and the entry of his returns of his taxable property on the tax-receiver's digests is *prima facie* evidence of his having taken such oath; and if false, he is guilty of false swearing, and is liable to be indicted and punished therefor. If the plaintiff had failed to make a return of his taxable property, in whole or in part, or had failed to affix a value to it, or had returned any portion of it below its value, it is then made the duty of the tax-receiver to assess its value and the amount of taxation due thereon: Revised Code, secs. 923, 833, 834, 835, 850. The law presumes that every citizen performs all his legal and social duties, and that the tax-receiver of the county of the plaintiff's residence performed his *official* duty in assessing the plaintiff's taxable property. The Act of 1870 makes no exception as to *insolvent* debts which were contracted before the 1st of June, 1865, but denies the aid of the Courts to *all debts* contracted prior to that date until the taxes thereon have been paid, whether such debts are *solvent* or *insolvent*, whether such debts were liable to be given in for taxes, under the general law of the State, or not liable to be so given in. The Act of 1870 necessarily assumes that the plaintiff swore *falsely* when he made his returns of his taxable property to the tax-receiver, for each year, and imposes a *penalty* on him therefor, by denying him the aid of the Courts to obtain a judgment on his debt until the tax has been given in and paid, whether his debt was *solvent* or *insol-*

Lott *vs.* Dysart *et al.*

*vent;* a penalty different from that prescribed by the general law of the State.

The Act of 1870 also assumes that the tax-receiver of the county of the plaintiff's residence failed to perform his *official* duty in assessing the plaintiff's taxable property under the general law of the State.

In considering the provisions of the Act of 1870, we are at a loss to say which exhibits the most cunning and craftiness, the subtle ingenuity with which the Act was drawn, to kill and destroy *all remedy* on that class of debts specified in it, or the various *pretexts* which have been resorted to, from time to time, by a majority of this Court to sustain the Act as a *revenue measure for the benefit of the State.* If the legal profession know what is the fixed and settled rule of construction to be given to that Act by the decisions of a majority of this Court, it is more than I profess to know. I have no doubt, however, that the Act of 1870 *invades* the legal obligation of the plaintiff's contract and his legal right to enforce it, as the same existed under the law at the time the contract was made; that it imposes *conditions* upon the legal right of the plaintiff to enforce the obligation of that contract, which did not exist under the law when the contract was made; and that the provision of the Act which requires the plaintiff to prove at the trial that his debt has been regularly given in for taxes and the taxes paid, as a condition precedent to his legal right of recovery thereon in the Courts of the State, *diminishes the value* of his debt and contract, and imposes a *penalty* upon him different from that prescribed by the general law of the State, at the time the contract was made. I therefore concur in the judgment of reversal in this case, not on the ground that the plaintiff had the right to pay the tax at the time of trial, under the provisions of the Act, as *revenue due the State,* but on the ground that the Act itself is in violation of the tenth section of the first article of the Constitution of the United States, and is *null and void.*