31781. MOTOR CONTRACT DIVISION OF TRUSCO FINANCE COMPANY *v.* SOUTHERN COTTON OIL COMPANY.

DECIDED NOVEMBER 26, 1947.

*C. L. Harris, O. Wendell Horne Jr.,* for plaintiff in error.
*E. F. Strozier,* contra.

PARKER, J. This case is a contest between Motor Contract Division of Trusco Finance Company, hereinafter referred to at times as the Finance Company, the plaintiff in error, and Southern Cotton Oil Company, the defendant in error, over certain funds derived from the sale of property by a sheriff under the levy of an execution.

On October 16, 1946, Fred Williams executed a note and bill of sale to secure its payment to Guy T. Cobb, the note being due and payable on November 16, 1946. The bill of sale conveyed three automobiles described therein. It was not recorded as provided by law. On the same day that the note and bill of sale were made, Cobb assigned all of his right, title and interest therein to the Citizens' and Southern National Bank of Macon. Thereafter, at the request of Williams, the Finance Company paid off the indebtedness to the bank, and on April 1, 1947, the

bank transferred the note and bill of sale to that company. On March 24, 1947, the Finance Company took from Fred Williams three new notes and bills of sale to secure debt, covering the same property and securing the same debt included in and secured by the note and bill of sale made on October 16, 1946. Each of the three renewal notes was secured by a bill of sale to one automobile only. These new notes and bills of sale renewed and extended the original indebtedness only, with the interest and carrying charges thereon, for a period of 12 months, and made it payable in monthly installments. Thus the matter stood on April 1, 1947, as between Motor Contract Division of Trusco Finance Company and Fred Williams.

Southern Cotton Oil Company came into the picture by suing Fred Williams and obtaining a judgment against him on November 4, 1946, on which judgment an execution was issued and entered on the general execution docket on January 22, 1947. On April 12 the sheriff levied the execution of Southern Cotton Oil Company on two of the three automobiles described in the original bill of sale made by Williams to Cobb and in two of the last three aforementioned bills of sale to secure debt. Pending the advertisement of the automobiles levied on, and on May 15, the Finance Company foreclosed the original bill of sale to secure debt made by Williams on October 16, 1946, and placed the execution in the foreclosure proceeding in the hands of the sheriff claiming the funds derived from the sale of the automobiles. The sheriff sold the two automobiles on May 20, and on his petition to the superior court for direction as to the distribution of the funds realized from the sale, each of the parties to this case was required to file its claim to the fund.

The Finance Company alleged in its claim that the three notes and bills of sale executed on March 24, 1947, were made as extensions and renewals of the original note and bill of sale which it held under transfer from the bank, and that there was no agreement, express or otherwise, between it and Fred Williams that the original bill of sale would be extinguished by the making of the three renewal contracts on March 24; and that the original bill of sale held by it was a prior lien on the automobiles sold by the sheriff, superior to the judgment under which the sale was made, and for these reasons it was entitled to the funds.

Southern Cotton Oil Company alleged in its claim that the execution by Fred Williams, and their acceptance by the Finance Company, of the three notes and bills of sale to secure debt constituted a novation as to the original bill of sale covering the automobiles, and that the lien of its judgment was superior to the lien of these three bills of sale to secure debt made after the judgment was obtained, and for these reasons it was entitled to the money in the hands of the sheriff. In rendering judgment the trial court conceded, as do the parties in their briefs in this court, that the judgment lien was not superior to the prior unrecorded bill of sale to secure debt. The court, however, adopted the view of the defendant in error that the making of the three new notes and bills of sale to secure debt, which were recorded, although they covered the same property and the same debt, constituted a novation, and held that the judgment lien was superior to the lien of those bills of sale, and under said holding the funds were awarded to the Southern Cotton Oil Company.

"One simple contract as to the same matter, and on no new consideration, does not destroy another between the same parties; but if new parties are introduced by novation, so as to change the person to whom the obligation is due, the original contract is at an end." Code, § 20-115. In *Wofford* v. *Gaines*, 53 *Ga.* 485 (1) it was held that "When a promissory note, given for land, and payable to the vendor and negotiable, went into the hands of a third person, and whilst he was the owner of the same it was renewed by the maker and a party added as security and the new note made payable to the holder: Held, that this is not such a novation of the original contract as that a homestead laid off in the land, is not subject to be levied on and sold to satisfy a judgment founded on the renewed note. The debt is still for the purchase money of the land." In the body of the opinion the court, speaking through Judge McCay, said: "1. The common law idea of a novation, is when A is indebted to B; and B to C, and by mutual agreement B is dropped out, and in consideration of this, A becomes debtor to C. In this way it was competent as it were to transfer a *chose* in action. This is the novation of the Code, section 2724; a new person is introduced to whom the obligation is due. In the case before us, the note was payable to the payee or bearer. It is admitted that if the

renewal had been to the original payee, though a security was added, there would have been no such novation as made a new contract. But when the renewal was made the note belonged to the bearer, and the question is, did the renewal to him alter the case? We think not. The note was payable to him. He was contracted with, in terms, at the giving of the note." The Code section referred to in the quotation is the same as the present § 20-115 set out above. Where after the mortgage was given, the debtor, by agreement between the parties, executed small notes in lieu of the original note secured by the mortgage, so as to give the creditor the right to sue in a justice's court, it was held that the transaction was not a novation but a mere renewal of the old note, and was not such as would give priority to a homestead taken out in the period between the execution of the original note and the renewal notes. *Davis* v. *Dunn,* 74 *Ga.* 36 (2a). "1. A new note given in lieu of an existing note between the same parties and for the same indebtedness, even at a higher rate of interest and due at a later date, is not given for a new consideration, and therefore does not constitute a novation. Civil Code (1910), § 4386. See, in this connection, *American Mortgage Co.* v. *Rawlings,* 127 *Ga.* 82 (56 S. E. 110)." *Georgia National Bank* v. *Fry,* 32 *Ga. App.* 695 (1) (124 S. E. 542). "Where A purchases a tract of land from B, and gives a purchase-money note therefor payable to B 'or order', and B transfers said note by endorsement, together with the reserved title to the land, to C, C becomes thereby a party both to the note and to the contract of purchase; and if said note becomes barred by the statute of limitations, and A enters into a new agreement with C, whereby A promises to pay to C the balance due on said note, by installments running through several years, the consideration remaining the same, and no new security being added, the fact that the holder of said note has been substituted as payee, and the time of payment definitely extended, does not constitute such a novation between said maker and holder as would extinguish the original debt and create a new one. See *Wofford* v. *Gaines,* 53 *Ga.* 485; *Lott* v. *Dysart,* 45 *Ga.* 358; 21 Am. & Eng. Enc. Law (2d ed), 663; 85 Ala. 401." *American Mortgage Co.* v. *Rawlings,* 127 *Ga.* 82 (1) (56 S. E. 110). See also *Belmont Farm* v. *Dobbs Hardware Co.,* 124 *Ga.* 827 (1)

(53 S. E. 312); *Standard Cooperage Co.* v. *O'Neill,* 146 *Ga.* 235, 237 (91 S. E. 82); *Blackshear Mfg. Co.* v. *Harrell,* 191 *Ga.* 433 (12 S. E. 2d, 328); *Brooks* v. *Jackins,* 38 *Ga. App.* 57 (1) (142 S. E. 574); *Farmers & Merchants Bank of Charing* v. *Rogers,* 55 *Ga. App.* 38 (1) (189 S. E. 274). In the *Brooks* case Judge Bell, speaking for this court, held that "A note given for an existing indebtedness, even at a higher rate of interest and due at a later date, is not given for a new consideration, and therefore does not constitute a novation. In the absence of agreement to the contrary, promissory notes are not payment until themselves paid."

We think, therefore, that under the foregoing authorities, which are applicable and controlling, there was no novation as to the original bill of sale, and the court erred in awarding the funds to the defendant in error under the judgment held by it. The original bill of sale to secure debt was executed before the judgment was obtained, and although it was not recorded, under the ruling in *Caldwell* v. *Northwest Atlanta Bank,* 194 *Ga.* 370 (21 S. E. 2d, 619), it was superior to the lien of the judgment. Since this was conceded by the parties, the court should have awarded the money to the plaintiff in error. The authorities cited by the defendant in error do not require a different ruling herein.

*Judgment reversed. Sutton, C. J., and Felton, J., concur.*