S13Q0040. YOU et al. v. JP MORGAN CHASE BANK, N.A. et al.
(743 SE2d 428)

HUNSTEIN, Chief Justice.

This case is before us on three questions certified to this Court by the United States District Court for the Northern District of Georgia[1] regarding the operation of this State's law governing non-judicial foreclosure. After careful analysis, we conclude that current law does not require a party seeking to exercise a power of sale in a deed to secure debt to hold, in addition to the deed, the promissory note evidencing the underlying debt. We also conclude that the plain language of our statute governing notice to the debtor, OCGA § 44-14-162.2, requires only that the notice identify "the individual or entity [with] full authority to negotiate, amend, and modify all terms

---

[1] See OCGA § 15-2-9.

of the mortgage with the debtor." This construction of OCGA § 44-14-162.2 renders moot the third and final certified question, which we do not address.

In 2003, Appellants Chae Yi You and Chur K. Bak purchased a home in Suwanee, Georgia. To finance their purchase, they obtained a loan from Excel Home Loans, Inc., executing both a promissory note and a deed to secure debt in Excel's favor. The security deed grants to Excel and its successors and assigns the power of sale in the event of the debtor's default under the note. At some point after the initial transaction, Excel transferred the note to an unidentified entity and assigned the deed to Chase Manhattan Mortgage Corporation, which through a series of mergers was succeeded by JP Morgan Chase Bank ("Chase"). The assignment from Excel explicitly granted to Chase and its successors all of Excel's "power, options, privileges and immunities" in the security deed and the indebtedness secured by it.[2]

Appellants defaulted on their loan, and in June 2011, pursuant to the deed's power of sale provisions, Chase initiated non-judicial foreclosure proceedings against the property by sending written notice to Appellants that the property would be sold at a foreclosure auction on the first Tuesday in August 2011. On August 2, 2011, in accordance with the notice, the property was sold at auction on the steps of the Gwinnett County courthouse, at which Chase was the highest bidder. Accordingly, Chase executed a deed under power conveying to itself all of Appellants' interest in the property. Chase then quitclaimed the property to the Federal National Mortgage Association ("Fannie Mae"), which filed a dispossessory action against Appellants in Gwinnett County Magistrate Court.

In November 2011, the magistrate court issued a writ of possession to Fannie Mae. Shortly thereafter, Appellants filed suit in Gwinnett Superior Court for declaratory relief, wrongful foreclosure, and wrongful eviction. The suit was removed to federal court, after which Appellees Chase and Fannie Mae moved to dismiss the action for failure to state a claim. The district court granted Appellees' motion to dismiss as to certain claims, including those for declaratory relief, but denied the motion without prejudice as to other claims, finding that their resolution depended on unsettled questions of Georgia

---

[2] Such assignments have become common in the current era of securitization of mortgages, in which large numbers of loans secured by real estate are pooled and repackaged as securities for sale to investors. See Alan M. White, *Losing the Paper – Mortgage Assignments, Note Transfers and Consumer Protection*, 24 Loy. Consumer L. Rev. 468, 471-472 (2012); Austin Hall, Note, Peach Sheets, Property, 25 Ga. St. U. L. Rev. 265, 266-268 (2008).

law.[3] Accordingly, the district court certified the following three questions to this Court and stayed its proceedings pending this Court's resolution thereof:

> (1) Can the holder of a security deed be considered a secured creditor, such that the deed holder can initiate foreclosure proceedings on residential property even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed?
>
> (2) Does OCGA § 44-14-162.2 (a) require that the secured creditor be identified in the notice described by that statute?
>
> (3) If the answer to the preceding question is "yes," (a) will substantial compliance with this requirement suffice, and (b) did defendant Chase substantially comply in the notice it provided in this case?

We answer "yes" to the first question and "no" to the second.

1. Georgia law clearly authorizes the use of "non-judicial power of sale foreclosure" as a means of enforcing a debtor's obligation to repay a loan secured by real property. See generally Frank S. Alexander, *Ga. Real Estate Finance and Foreclosure Law*, § 8:1 (2012-2013 ed.). Such a process, which in Georgia dates back to the 1800s, permits private parties to sell at auction, without any court oversight, property pledged as security by a debtor who has come into default. Id. "As a privately authorized yet state-sanctioned remedy available in secured real estate transactions, the form and substance of power of sale foreclosures is determined first and foremost by the express terms of the underlying instrument." Id. Thus, Georgia courts have long held that non-judicial foreclosure is governed primarily by contract law. Id.; see also *Moseley v. Rambo*, 106 Ga. 597, 600 (1) (32 SE 638) (1899) (power of sale "is a remedy, therefore, by contract,

---

[3] These unsettled issues have arisen with frequency in recent years in wrongful foreclosure suits pursued in our federal district courts. See, e.g., *Patterson v. CitiMortgage, Inc.*, 2012 U. S. Dist. LEXIS 138331 (III) (A) (2) (N.D. Ga. Sept. 26, 2012) (denying without prejudice motion to dismiss wrongful foreclosure claim pending this Court's decision in the instant case); *Alexis v. Mortgage Electronic Registration Systems, Inc.*, 2012 U. S. Dist. LEXIS 29230 (I) (B) (2) & (C) (N.D. Ga. March 5, 2012); *Stubbs v. Bank of America*, 844 FSupp.2d 1267 (IV) (A) (N.D. Ga. 2012); *Nelson v. Bank of America*, 2012 U. S. Dist. LEXIS 12159 (III) (N.D. Ga. Jan. 31, 2012); *Kabir v. Statebridge Co.*, 2011 U. S. Dist. LEXIS 109778 (II) (B) (1) (N.D. Ga. Sept. 27, 2011); *Morgan v. Ocwen Loan Servicing, LLC*, 795 FSupp.2d 1370 (III) (C) (2) (N.D. Ga. 2011); *LaCosta v. McCalla Raymer, LLC*, 2011 U. S. Dist. LEXIS 5168 (II) (B) (N.D. Ga. Jan. 18, 2011). Our Court of Appeals has likewise grappled with these issues on recent occasions. See, e.g., *Larose v. Bank of America*, 321 Ga. App. 465 (740 SE2d 882) (2013); *Montgomery v. Bank of America*, 321 Ga. App. 343 (2) (740 SE2d 434) (2013); *Reese v. Provident Funding Assocs.*, 317 Ga. App. 353 (1) (730 SE2d 551) (2012), cert. pending.

intended to substitute the remedy by law"); *Gordon v. South Central Farm Credit*, 213 Ga. App. 816, 817 (446 SE2d 514) (1994) (" 'a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto' ").

The scant statutory law that does exist in this area has evolved as a means of providing limited consumer protection while preserving in large measure the traditional freedom of the contracting parties to negotiate the terms of their arrangement. See *Law v. United States Dept. of Agriculture*, 366 FSupp. 1233, 1238 (N.D. Ga. 1973) (statutes governing non-judicial foreclosure set "minimal requirements for the exercise of any contractual power of sale contained in security instruments").[4] These limited statutory protections are codified in OCGA §§ 44-14-160 through 44-14-162.4 and consist primarily of rules governing the manner and content of notice that must be given to a debtor in default prior to the conduct of a foreclosure sale. For example, OCGA § 44-14-162 (a) requires that sales under power must "be advertised and conducted at the time and place and in the usual manner of the sheriff's sales in the county in which [the] real estate . . . is located." In addition,

> [n]otice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor.

OCGA § 44-14-162.2 (a). These two quoted Code sections form the basis of Appellants' argument that Chase improperly foreclosed on their residence.

Appellants' primary argument, which relates to the first of the three certified questions, is that Chase was not authorized to conduct the foreclosure because, while it was the holder of the security deed,

---

[4] The limited nature of this State's consumer protections in this area is reflected in the fact that "Georgia law permits secured real estate creditors to levy upon the security more quickly than any other jurisdiction." Alexander, *Ga. Real Estate Finance and Foreclosure Law*, § 8:1.

it did not also hold the note evidencing the debt in default. Appellants claim that, because the basis for exercising the power of sale was the default on the note, only a party who actually holds the note is authorized to exercise such power. Appellants base this contention in part on the fact that the above Code sections refer to the foreclosing party as the "secured creditor," which Appellants construe to mean a party who holds both the deed (thereby qualifying as "secured") and the note (thereby qualifying as a "creditor"). While this argument has superficial appeal, we reject it as inconsistent with the language and intent of our statutes.

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Where the plain language of the statute is clear and susceptible to only one reasonable construction, we must construe the statute according to its terms. *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). However, where there is ambiguity, the entire legislative scheme, including its history, may be examined. See *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 707 (10 SE2d 375) (1940).

The plain language of the non-judicial foreclosure statute nowhere specifies whether the foreclosing party must hold the note in addition to the deed. Moreover, the term "secured creditor," which is used to signify the foreclosing party, is not defined in the statute, an omission particularly notable given the statute's explicit definition of the term "debtor." See OCGA § 44-14-162.1. The term "secured creditor" was introduced into the statute in 1981 when the provisions requiring notice to the debtor were first enacted. See Ga. L. 1981, p. 834. At that time, our common law appears to have allowed for the possibility of a non-judicial foreclosure conducted by one who held legal title to the property but not the underlying note. See *White v. First Nat. Bank of Claxton*, 174 Ga. 281 (4) (162 SE 701) (1932) (affirming validity of non-judicial foreclosure sale conducted by party who held title to property but not underlying promissory note). See also *Shumate v. McLendon*, 120 Ga. 396 (10) (40 SE 10) (1904) (recognizing possibility that grantee in security deed may transfer debt without transferring title to property). Thus, while the phenomenon of "splitting" ownership of the note from ownership of the deed may not have been prevalent until relatively recently, this practice was not expressly prohibited prior to the enactment of the modern non-judicial foreclosure statute in 1981.[5]

---

[5] Neither *Sammons v. Nabers*, 184 Ga. 269 (191 SE 124) (1937), nor *Weems v. Coker*, 70 Ga. 746 (1883), leads us to conclude otherwise, for the simple reason that both of these cases

In introducing the term "secured creditor" without defining it, the 1981 statute appears to have made no change in this regard. Tellingly, the legislature plainly stated that the notice provisions it was then enacting were "procedural and remedial in purpose." Ga. L. 1981, pp. 834, 836, § 5 (a). This statement is a clear indication that the legislature did not intend to make substantive changes to the law governing non-judicial foreclosures or narrow the class of parties entitled to conduct such foreclosures. Indeed, subsequent to the 1981 enactment, this Court has continued to recognize the stand-alone enforceability of the deed, apart from the note, thus reinforcing the ability of a deed holder to exercise its rights under the deed, independent of the note. See *Decatur Federal Savings and Loan Assn. v. Gibson*, 268 Ga. 362 (2) (489 SE2d 820) (1997) ("the security deed stands alone so long as the underlying debt remains, . . . regardless of the note's enforceability"); *Brinson v. McMillan*, 263 Ga. 802 (2) (440 SE2d 22) (1994) (party could exercise rights under security deed even if action on note barred by statute of limitations).

Also revealing are the most recent amendments to OCGA §§ 44-14-162 and 44-14-162.2, enacted in 2008 amidst the Great Recession and the burgeoning foreclosure crisis. See Austin Hall, Note, Peach Sheets, Property, 25 Ga. St. U. L. Rev. 265, 266-270 (2008). The amendments were a direct response to the foreclosure crisis brought on by the growth in sub-prime lending, which had been fueled by the rise of mortgage securitization. Id. at 266-270. Securitization often involves the decoupling of the loan from the deed as a matter of course. See Alan M. White, *Losing the Paper – Mortgage Assignments, Note Transfers and Consumer Protection*, 24 Loy. Consumer L. Rev. 468, 471-472 (2012) (explaining that securitization process involves original lender making separate assignments of note and security deed, with the two transfers being subject to different legal requirements); see also *Taylor, Bean & Whitaker Mtg. Corp. v. Brown*, 276 Ga. 848, 848 (1), n. 1 (583 SE2d 844) (2003) (explaining common practice by which borrower names a third party, Mortgage Electronic Registration System or "MERS," as grantee in deed to secure debt). As Appellants conceded at oral argument, this practice has become the norm in residential lending. See Peach Sheets, 25 Ga. St. U. L. Rev. at 269 (noting that in 2006 more than 60% of home mortgages went into securitization trusts). Yet the amendments

---

involved judicial foreclosures, in which competent evidence of the underlying debt is required to establish one's cause of action. See Alan M. White, *Losing the Paper*, 24 Loy. Consumer L. Rev. at 480 (distinguishing judicial from non-judicial foreclosures in that "[i]n a judicial foreclosure, as the plaintiff, the foreclosing party must come forward with evidence that it is the proper transferee of the note").

made no express reference to this practice of splitting note from deed, and there is no other evidence of any intent to change this common practice.[6] Rather, the aim of the amendments was simply to provide more transparency in the process to assist borrowers facing foreclosure. Id. at 272-273. Accordingly, we find no evidence from which to divine that the General Assembly intended in 2008 to make fundamental changes to the prevailing practice surrounding nonjudicial foreclosures.

Nor do we agree with the contention that Georgia's Uniform Commercial Code prohibits a party who does not hold the note from exercising the power of sale in the deed securing the note. It is true that a promissory note is a negotiable instrument subject to Article 3 of the UCC. See OCGA § 11-3-104 (defining "negotiable instrument"). It is also true that Article 3 provides generally that only the holder of an instrument is entitled to enforce the instrument. OCGA § 11-3-301. However, it is equally true that, here, Chase does not seek to enforce the note but rather is enforcing its rights under the security deed, which is not a negotiable instrument and is therefore not governed by Article 3. See Alexander, *Georgia Real Estate Finance and Foreclosure Law*, § 5:3 (b) ("[a] security deed is an interest in real property subject to all of the incidents and requirements of real property transfers under Georgia law, and a note is a contractual obligation . . . subject to the quite different requirements of the Uniform Commercial Code"). In fact, Georgia law governing the transfer of security deeds expressly provides that "[t]ransfers of deeds to secure debt . . . shall be sufficient to transfer the property therein described *and the indebtedness therein secured.*" (Emphasis supplied.) OCGA § 44-14-64 (b). This Code section further supports the conclusion that the deed holder possesses full authority to exercise the power of sale upon the debtor's default, regardless of its status with respect to the note.

We recognize that some legal scholars take the position that because the debt is the principal obligation and the security is incidental to the debt, see *Weems v. Coker*, 70 Ga. 746, 747 (1) (1883), the deed holder should not be authorized to exercise the power of sale unless it also holds the note. See Alexander, *Georgia Real Estate Finance and Foreclosure Law*, § 5:3 (b) (noting that "problems may arise" when the note and deed are transferred to different transferees). Indeed, under the Third Restatement of Property, "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to

---

[6] Indeed, as noted in the Peach Sheets, "[t]here was . . . concern that dramatic change could cause turmoil in the secondary mortgage market, which in the long run would be detrimental to borrowers." 25 Ga. St. U. L. Rev. at 273.

enforce the obligation the mortgage secures." Restatement (Third) of Property: Mortgages, § 5.4 (c). The comments note the section's "essential premise . . . that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same person." Id. at § 5.4, cmt. a. While this approach may indeed be sensible, it is not the approach our General Assembly has adopted.

Appellants contend that if Chase is permitted to exercise the power of sale, Appellants will be at risk of double liability because the note holder will still have the right to sue for default under the note. We do not believe the law necessarily allows such a result; our law has long held that one who holds a secured note necessarily holds an equitable interest in the security itself. See OCGA § 10-3-1 ("[t]he transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security"); *Chapman v. McPherson*, 184 Ga. 613 (4) (192 SE 423) (1937) (valid transfer of note necessarily transferred equitable title to security, even if transferee did not hold legal title); *White v. First Nat. Bank*, 174 Ga. at 293 (4) (" '[t]he grantee in a security deed holds the legal title for the benefit of the owner of the debt' "); *Shumate*, 120 Ga. at 397 (10) (if secured debt is assigned but deed is not, deed holder holds legal title to property for benefit of note holder). Because this issue is not directly presented here, however, we need not resolve it.

For these reasons, we answer the first certified question in the affirmative. Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed.

2. In the second certified question, the district court asks whether OCGA § 44-14-162.2 (a) requires that the secured creditor be identified in the notice to the debtor. We need look no further than the plain language of the statute to determine whom the notice must name:

> Such notice shall be in writing [and] shall include the name, address, and telephone number of *the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor*.

(Emphasis supplied.) Id. If that individual or entity is the holder of the security deed, then the deed holder must be identified in the notice; if that individual or entity is the note holder, then the note holder must be identified. If that individual or entity is someone other than the deed holder or the note holder, such as an attorney or

servicing agent, then that person or entity must be identified. The statute requires no more and no less. Accordingly, we answer the second certified question in the negative.[7]

3. Because the third certified question is conditioned on an affirmative answer to the second question, we need not, and do not, reach it.

4. As members of this State's judicial branch, it is our duty to interpret the laws as they are written. See *Allen v. Wright*, 282 Ga. 9 (1) (644 SE2d 814) (2007). This Court is not blind to the plight of distressed borrowers, many of whom have suffered devastating losses brought on by the burst of the housing bubble and ensuing recession. While we respect our legislature's effort to assist distressed home-owners by amending the non-judicial foreclosure statute in 2008, the continued ease with which foreclosures may proceed in this State gives us pause, in light of the grave consequences foreclosures pose for individuals, families, neighborhoods, and society in general. Our concerns in this regard, however, do not entitle us to overstep our judicial role, and thus we leave to the members of our legislature, if they are so inclined, the task of undertaking additional reform.

*Certified questions answered. All the Justices concur.*

DECIDED MAY 20, 2013.

*David C. Ates*, for appellants.

*Ellis, Painter, Ratterree & Adams, Paul W. Painter, Jr., Sarah B. Akins, Megan U. Manly, Wargo & French, Joseph D. Wargo, Shanon J. McGinnis, Michael Wolak III, Julie C. Jared, Amy L. Hanna*, for appellees.

*Charles R. Bliss, Karen E. Brown, John R. Bartholomew IV, David A. Webster, Dickenson Gilroy, Monica K. Gilroy, Tania T. Trumble*, amici curiae.

[7] We note that the district court's Order and Opinion states that a "dispositive question in this case" is "whether OCGA § 44-14-162.2 (a) requires that a foreclosure notice identify an entity as the secured creditor." See Order and Opinion, at 23. To the extent the second certified question was also intended to encompass this issue, we hold that the required notice need not expressly identify the foreclosing party as a "secured creditor."