**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 20, 2015**

# In the Court of Appeals of Georgia

A14A2204. RIVER FOREST, INC. et al. v. MULTIBANK 2009-1
        RES-ADC VENTURE, LLC.

BARNES, Presiding Judge.

The trial court granted summary judgment in favor of Multibank 2009-1 Res-ADC Venture, LLC ("Multibank") on its claims for breach of a promissory note and guarantees and for attorney fees brought against River Forest, Inc. and David W. Aldridge (collectively, the "defendants"). On appeal, the defendants contend that the trial court must be reversed because Multibank (1) failed to show that it was the "holder" under the Uniform Commercial Code ("UCC") of a "note modification" entered into after the original note; (2) failed to establish a prima facie right to recover the underlying debt from the defendants by not producing the note modification; (3) failed to properly sue on, or move for summary judgment on, the note modification in addition to the original note; and (4) failed to pierce the defendants' affirmative defenses. For the reasons discussed below, we conclude that

the trial court committed no error in granting summary judgment to Multibank and therefore affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Salahat v. F.D.I.C.*, 298 Ga. App. 624, 625 (680 SE2d 638) (2009).

So viewed, the record shows that on January 29, 2007, River Forest executed and delivered to FirstCity Bank a promissory note in the principal amount of $971,000 (the "Original Note"). The Original Note provided that the principal balance would be due on February 1, 2009, and established a variable interest rate between 9.25 percent and 18 percent during the term of the loan. If collection efforts were instituted by FirstCity, the Original Note provided that River Forest would pay attorney fees in the amount of 15 percent of the unpaid principal and interest, plus court costs. The Original Note further provided that FirstCity "may at [its] option

extend this note or the debt represented by this note . . . without affecting [River Forest's] liability for payment of the note."

On the same day that the Original Note was executed, Aldridge, the President of River Forest, executed and delivered to FirstCity a personal guaranty for the debt owed by River Forest (the "Original Guaranty"). The Original Guaranty obligated Aldridge to repay the indebtedness evidenced by the Original Note and "any and all extensions, renewals, modifications, amendments, replacements and consolidations of such note."

On February 1, 2009, River Forest and FirstCity entered into a "Note Modification" that modified and extended the terms of the Original Note. Among other things, the Note Modification extended the maturity date of the Original Note to February 1, 2010, and lowered the interest rate on the Original Note to a fixed rate of 6 percent. The Note Modification also recited that upon an additional interest payment by River Forest on the date of the modification, "the principal balance of the indebtedness will be $693,900." Additionally, the Note Modification recited that "[River Forest] affirms all terms and conditions of the [Original] Note, . . . except as otherwise modified herein."

On the same day that the Note Modification was executed, Aldridge executed and delivered to FirstCity a related personal guaranty (the "Second Guaranty"). The Second Guaranty obligated Aldridge to repay any indebtedness owed by River Forest to First City as evidenced by any promissory note and "any and all extensions, renewals, modifications, amendments, replacements and consolidations of such note."

On March 20, 2009, FirstCity was closed by the Georgia Department of Banking and Finance, and the Federal Deposit Insurance Corporation ("FDIC") was named as receiver. On February 9, 2010, the FDIC assigned all of its right, title, and interest in the Original Note "and any amendments, modifications or changes thereto," the Original Guaranty, and the Second Guaranty to Multibank. The FDIC also transferred to Multibank the loan transaction records and payment history for the loan made to River Forest.

River Forest and Aldridge failed to repay the outstanding principal balance and accrued interest on the Original Note by the revised maturity date of February 1, 2010. Multibank thereafter brought the instant suit against them, seeking the unpaid principal balance, accrued interest, and attorney fees. Attached to Multibank's complaint were the Original Note, the Original Guaranty, and the Second Guaranty, but not the Note Modification. The complaint alleged that River Forest had breached

4

the Original Note "as renewed" and that Aldridge had breached the Original Guaranty and Second Guaranty. It did not make specific reference to the Note Modification.

Multibank moved for summary judgment on its claims against the defendants and submitted the affidavit of Jonathan Levy, the attorney-in-fact for the entity serving as manager of Multibank. Levy averred that he had personal access to and control of Multibank's loan files and records, which were created and maintained by Multibank in the ordinary course of its business, and that he had personal knowledge of their contents, including knowledge of the status and payment history of the Original Note and "all modifications and renewals thereto." Levy further averred that Multibank had possession of the Original Note, the Original Guaranty, and the Second Guaranty, and he referenced and authenticated the originals of those instruments, which were attached as exhibits to his affidavit. According to Levy, Multibank received these instruments when the FDIC assigned and transferred them to Multibank in the ordinary course of business, pursuant to an allonge, omnibus assignment, and limited power of attorney document, all of which also were attached to his affidavit and authenticated by him. Finally, Levy referenced and authenticated as business records the loan transaction records and payment history for the Original Note, which included entries reflecting the extension of the maturity date to February

5

1, 2010, and the lowering of the interest rate to a fixed rate of 6 percent. Levy, however, did not expressly make reference to the Note Modification or attach it to his affidavit.

In opposing summary judgment, the defendants did not dispute that they had executed the Original Note, First Guaranty, and Second Guaranty, or come forward with any evidence contradicting the payment history attached to Levy's affidavit. Rather, the defendants focused on the Note Modification, a copy of which was attached to and authenticated in an affidavit submitted by Aldridge. Because Multibank had not produced or otherwise shown that it possessed the Note Modification in addition to the Original Note, the defendants argued, among other things, that Multibank had failed to establish that it was the "holder" of the "full and complete" negotiable instrument under the UCC and had failed to establish a prima facie case for recovery.

The trial court rejected the arguments raised by the defendants and granted summary judgment in favor of Multibank on all of its claims. The trial court determined that the uncontroverted evidence showed that Multibank was entitled to enforce the obligations set forth in the Original Note, Note Modification, Original Guaranty, and Second Guaranty against the defendants. This appeal followed.

6

1. The defendants contend that the trial court's summary judgment order must be reversed because Multibank failed to prove that it was the "holder" of the full and complete negotiable instrument under the UCC. According to the defendants, Multibank was not entitled to recover the debt evidenced by the Original Note because Multibank failed to show that it was in possession of the Note Modification, and thus failed to show that it was in possession of the entire negotiable instrument. We are unpersuaded.

A promissory note is a negotiable instrument subject to Article 3 of the UCC. *You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 73 (1) (743 SE2d 428) (2013). See OCGA § 11-3-104 (a) (defining "negotiable instrument"). Article 3 provides that the ability to recover on a particular note is held by the "person entitled to enforce" the note under OCGA § 11-3-301. To enforce a note under the most frequently employed method under Article 3, the person must be the "holder" of the note. OCGA § 11-3-301 (i).[1] See *You*, 293 Ga. at 73 (1); *Salahat*, 298 Ga. App. at 628 (2). The person is

[1] OCGA § 11-3-301 provides:
"Person entitled to enforce" an instrument means (i) the holder of the instrument; (ii) a nonholder in possession of the instrument who has the rights of a holder; or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Code Section 11-3-309 or subsection (d) of Code Section 11-3-418. A person may be a person entitled to enforce the instrument even though the person is not

the "holder" of the note if he is "in possession" of a note that is "payable either to bearer or to an identified person that is the person in possession." OCGA § 11-1-201 (20) (2002).[2] This statutory language makes clear that possession of the note is a prerequisite to obtaining the status of "holder." See *Jenkins v. Wachovia Bank, N.A.*, 309 Ga. App. 562, 564 (1) (711 SE2d 80) (2011).

The question in this case is whether Multibank had to possess both the Original Note and the Note Modification to be a "holder" entitled to bring suit and enforce the underlying debt obligation against the defendants. We conclude that Multibank did not have to possess both the Original Note and Note Modification because the Note Modification was a renewal of the Original Note rather than a novation.

---

the owner of the instrument or is in wrongful possession of the instrument.

Multibank does not rely upon subsection (ii) or (iii) of the statute. Accordingly, we address only whether Multibank is entitled to enforce the Original Note and any modifications thereto as a "holder" under subsection (i).

[2] In 2010, the General Assembly amended the definition of "holder" to include additional classes of persons. See Ga. L. 2010, p.481, § 2-1 / HB 451; OCGA § 11-1-201 (20) (b) - (c) (Supp. 2014). The amendment does not apply in this case. See Ga. L. 2010, p. 481, § 3-1 ("This Act does not apply to a right of action that has accrued before the effective date of this Act [May 27, 2010]."); *Chatham v. Georgia Pacific Corp.*, 163 Ga. App. 525 (295 SE2d 226) (1982) (cause of action on promissory note or guaranty accrues on the date the obligation becomes due and payable).

Notably, the statutory provisions at issue in this case do not specifically address "holder" status under the circumstance where a promissory note has been renewed. However, we have held that "a note taken in renewal of an existing note is but a contract modifying the terms of the existing note, and [it] creates no new obligation to pay[.]" *Cairo Banking Co. v. Hall*, 42 Ga. App. 785 (4) (157 SE 346) (1931). And under the rationale that a renewal represents the same underlying indebtedness as the original note, several courts have held that "[w]here renewal notes are involved, the holder may sue either on the renewal note *or* on the original note." (Emphasis supplied.) *Smith v. First Pasadena State Bank*, 401 S.W.2d 123, 127 (Tex. App. 1966).[3] "This rule holds unless there has been a proven novation" of the original note. *Thompson*, 840 S.W.2d at 29. See *Waggoner*, 999 F.2d at 829, n.3; *Cadle Co.*, 897 P.2d at 1106, n. 1. Accordingly, under the reasoning of these foreign courts, if an original note has been renewed rather than extinguished through a novation, it is

---

[3] See *F.D.I.C. v. Waggoner*, 999 F.2d 826, 829, n.3 (5th Cir. 1993); *Lechleiter v. Lechleiter*, 71 N.E.2d 845, 848 (Ill. App. Ct. 1947); *Dyer v. Bray*, 180 S.E. 83 (N.C. 1935); *In re Foreclosure of a North Carolina Deed of Trust executed by L.L. Murphrey Co.*, 764 S.E.2d 221, 229 (N.C. Ct. App. 2014); *Cadle Co. v. Wallach Concrete*, 897 P.2d 1104, 1106, n. 1 (N.M. 1995); *Chapman v. Crichet*, 95 S.W.2d 360, 363 (Tex. 1936); *Thompson v. Chrysler First Business Credit Corp.*, 840 S.W.2d 25, 29 (Tex. App. 1992); *Villareal v. Laredo Nat. Bank*, 677 S.W.2d 600, 607 (Tex. App. 1984).

sufficient for a person seeking to recover the outstanding debt to bring suit as the "holder" of the original note.[4]

We find the reasoning of these cases from foreign jurisdictions persuasive and adopt the same rule. It follows that if the Note Modification was a renewal of the Original Note rather than a novation, Multibank was entitled to bring suit and enforce the underlying debt against the defendants so long as Multibank demonstrated that it was the "holder" of the Original Note. Accord *Cairo Banking Co.*, 42 Ga. App. at 785 (4) (holding that renewal of promissory note did not change the status of a "holder in due course" of the original note).

A novation has four elements: "(1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation." (Citation and punctuation omitted.) *Brown v. Lawrenceville Properties, LLC*, 309 Ga. App. 522, 524 (1) (710 SE2d 682) (2011).

---

[4] It is true that the renewal may contain provisions modifying some of the terms and conditions of the original note (such as the interest rate) that may have an effect on a plaintiff's ultimate recovery, but that is a separate issue from whether the plaintiff may bring suit as the "holder" of the original note.

> [W]here, after the execution of a promissory note, a renewal or new note is executed for the same debt, it is the general rule that the second instrument does not of itself operate as a . . . novation extinguishing the first note, unless there is an agreement between the parties to that effect.

(Citations and punctuation omitted.) *Feely v. First American Bank of Ga., N.A.*, 206 Ga. App. 53, 57 (2) (b) (424 SE2d 345) (1992). Furthermore, "[a] new note given in lieu of an existing note between the same parties and for the same indebtedness, even at a higher rate of interest and due at a later date, is not given for a new consideration, and therefore does not constitute a novation." *Cohen's Dept. Stores v. Siegel*, 60 Ga. App. 79, 80 (2 SE2d 762) (1939). See *Motor Contract Div. of Trusco Finance Co. v. Southern Cotton Oil Co.*, 76 Ga. App. 199, 203 (45 SE2d 291) (1947).

In the present case, the Note Modification changed some of the terms of the Original Note, such as the interest rate and maturity date, but it did not add to or subtract from the principal indebtedness owed by the defendants.[5] The parties also

---

[5] The Note Modification stated that the principal balance of the indebtedness would be $693,900 after an additional interest payment was made by River Forest. Through this statement, the parties were simply memorializing the current balance owed on the Original Note upon the payment of certain interest; there is nothing in the Note Modification itself or otherwise in the record to suggest that the parties intended to write off any portion of the principal balance owed on the Original Note by entering into the Note Modification.

stated in the Note Modification that their intent was "to modify certain terms of [the Original] Note" and that the defendants were "affirm[ing] all terms and conditions of the [Original] Note, . . . except as otherwise provided herein." Thus, the parties clearly did not intend for the Note Modification to extinguish the Original Note altogether. Under these circumstances, the uncontroverted evidence shows that the Note Modification was a renewal of the Original Note rather than a novation. See *Motor Contract Div. of Trusco Financial Co.*, 76 Ga. App. at 203; *King v. Edel*, 69 Ga. App. 607, 611-614 (26 SE2d 365) (1943); *Cohen's Dept. Stores*, 60 Ga. App. at 80. Compare *Gilbert v. Cobb Exchange Bank*, 140 Ga. App. 514 (231 SE2d 508) (1976) (second note was novation of first note where second note added $600 to the principal balance owed on the debt).

Because the Note Modification was a renewal of the Original Note, it was sufficient for Multibank to bring suit as the "holder" of the Original Note. See *supra* footnote 3. And the defendants do not dispute on appeal that Multibank possessed and was the "holder" of the Original Note. Consequently, the defendants have failed to show that the trial court erred in concluding that Multibank was a "holder" entitled to bring suit to enforce the underlying debt against them.

2. The defendants further contend that the trial court's summary judgment order must be reversed because Multibank failed to establish a prima facie right to recover on the debt. According to the defendants, Multibank could not make out a prima facie case for recovery because it failed to produce the Note Modification when moving for summary judgment. We disagree.

> A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish an affirmative defense.

(Citation omitted.) *Lovell v. Georgia Trust Bank*, 318 Ga. App. 860, 863 (2) (734 SE2d 847) (2012).

In moving for summary judgment, Multibank, through the affidavit of Jonathan Levy, produced and authenticated the Original Note, the Original Guaranty, and the Second Guaranty, all of which contained language contemplating renewals of the Original Note.[6] In his affidavit, Levy also produced and authenticated the documents

---

[6] The Original Note provided: "[Borrower] agree[s] that [Lender] may at [its] option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting [Borrower's] liability for payment of the note." The Original Guaranty and Second Guaranty provided:

reflecting the transfer and assignment of the Original Note "and any amendments, modifications or changes thereto," the Original Guaranty, and the Second Guaranty to Multibank by the FDIC as receiver for FirstCity. Lastly, Levy produced and authenticated in his affidavit the loan transaction records and payment history for the Original Note, which included entries reflecting the modification of the maturity date to February 1, 2010, and the modification of the interest rate to a lower fixed rate of 6 percent.

Although Multibank did not produce the Note Modification, the defendants, through the affidavit of Aldridge, produced and authenticated a copy of it. After the defendants produced a copy of the Note Modification, Multibank did not dispute its authenticity or contest its application in calculating the amount owed by the defendants in this case.

---

[Guarantor] hereby unconditionally guarantees the full and prompt payment when due . . . of . . . any indebtedness evidenced by any Promissory Note . . . executed by the Borrower and payable to the order of the Bank representing a loan . . . from the Bank to the Borrower, plus the interest specified in such note, and any and all extensions, renewals, modifications, amendments, replacements and consolidations of such note . . . .

We conclude that the trial court was entitled to take into account this combined evidence and find that Multibank had established a prima facie right to recover the underlying debt owed by the defendants, as reflected in the Original Note together with the Note Modification. While normally a plaintiff will establish its prima facie case by itself producing and authenticating the negotiable instrument and all pertinent modifications thereto, we discern no reason why a different rule should apply simply because the defendant produced and authenticated some part of the loan documents. To draw such a distinction would elevate form over substance, particularly where, as here, the plaintiff did not contest the authenticity and applicability of the loan documents produced by the defendant. Accordingly, the trial court did not err in concluding that Multibank had established a prima facie right to recovery.

3. The defendants next contend that the trial court's summary judgment order must be reversed because Multibank "did not sue on, or move for summary judgment on," the Note Modification in addition to the Original Note. Again, we disagree.

As an initial matter, although Multibank's complaint did not specifically reference the Note Modification, it did allege that the Original Note "*as renewed*" had been breached by the defendants. (Emphasis supplied.) Furthermore, in its motion for summary judgment, Multibank argued that the defendants had failed to pay the

15

outstanding principal balance and all accrued interest owed on the Original Note, "as modified, renewed and/or extended."

In any event, as discussed in Division 1, when a promissory note has been renewed, a holder has the option of suing on either the original note or the renewal. See *supra* footnote 3. Because the Note Modification was a renewal of the Original Note, Multibank was entitled to sue on the Original Note. With respect to summary judgment, the Note Modification was produced and authenticated by the defendants without objection from Multibank, and, as explained in Division 2, it would elevate form over substance to draw a distinction, for purposes of summary judgment, between which party produced the Note Modification.

As part of this enumeration of error, the defendants also contend that Multibank's failure to expressly reference the Note Modification in its complaint and motion for summary judgment led the trial court to ignore the application of the Note Modification and enter judgment "on the wrong negotiable instrument and for the wrong indebtedness." But the trial court expressly found that Multibank was "entitled to enforce the obligations set forth in the promissory note, *note modification* and note guarantees," and thus clearly took into account the Note Modification that had been

16

produced and authenticated by the defendants. (Emphasis supplied.) The defendants' contention thus is without merit.

4. Finally, the defendants contend that the trial court's summary judgment order must be reversed because Multibank failed to pierce their affirmative defenses. In support of this contention, the defendants argue that Multibank failed to make out a prima facie right to recovery. They further argue that Multibank failed to demonstrate that it was the "holder" of the entire negotiable instrument, and thus failed to show that it had standing and was the real party in interest to pursue the action. The defendants' arguments fail for the reasons discussed in Divisions 1 and 2.

*Judgment affirmed. Boggs and Branch, JJ., concur*.